# SUPREME COURT

### OF THE

# STATE OF COLORADO.

## April Term, A. D. 1915.

[No. 8696.]

THE PEOPLE EX REL. BURKE ET AL. V. THE DISTRICT COURT OF
THE THIRD JUDICIAL DISTRICT ET AL.

1. SUPREME COURT—*Original Jurisdiction—What Matters Are Publici Juris.*
The question whether one accused of crime shall be tried before an impar-
tial tribunal is of public concern. One indicted for homicide, and who, com-
plying with the statute (Rev. Stat. secs. 6963, 6964), applies in apt time for
a change of the venue, or, of the judge, on the ground of the prejudice or
incompetency of the judge presiding, and whose application is erroneously
denied, is entitled to apply to this court for the writ of prohibition. (4.)

2. CRIMINAL LAW—*Change of Venue.* One accused of crime, and who,
alleging prejudice on the part of the judge presiding in the court where
he is accused, complies with the provisions of the statute (Rev. Stat. secs.
6963, 6964, 6966), is entitled as of right to a change of the venue, or the
substitution of another judge, and the judge against whom prejudice or
incompetency is so suggested loses all authority and jurisdiction, save to
grant the application. (5.)

No inquiry is to be made as to the truth of what is alleged in such appli-
cation. It is accepted as true, though known of all men to be false. (8.)

Where the judge is shown to have manifested a partisan feeling evidencing a pre-judgment of the matter in issue, he is disqualified. (8.)

3. —— *Petition—Requisites.* The mere assertion that the judge is prejudiced or incompetent, is not sufficient. The facts from which prejudice or incompetency is to be inferred must be set forth. (8.)

If the application discloses facts reasonably tending to the conclusion that the judge has a leaning towards one side of any question involved in the prosecution, or a bias in relation to it, which may interfere with fairness in judgment, he is prejudiced and incompetent, within the meaning of the statute. Much less detail of facts will suffice, than where the ground of the application is prejudice of the inhabitants. (10.)

The credibility of the witnesses will be presumed unless the contrary appears from their affidavits. (11.)

The petition examined and *held* to exhibit bias or prejudice on the part of the presiding judge.

The petition averred that the information against the petitioners was one of a series of criminal informations, know as "strike cases," instigated by certain coal operators, for crimes alleged to have been committed by striking miners in an industrial war, that the judge, prior to his appointment, had been employed by such coal operators to assist in the prosecution of such "strike cases," and had spent much time in securing affidavits in another county, to support an application for the transfer thereto of these "strike cases." The petition failed to aver the title of any of the "strike cases" in which the judge had appeared, but these "strike cases" were pending in the same court with the information against the petitioners. The petition was held sufficient under the rule announced in *Hughes v. People*, 5 Colo. 436. (19.)

4. —— *Time of Application.* His honor whose competency was in question first appeared as the judge of the court in which the information against the petitioners was pending, on the first day of the term next succeeding the arrest of the petitioners. On that day counsel for the petitioners, before the case was called, announced that they desired to present therein a petition for the change of the judge, and it was agreed between them and the District Attorney that the cause should be passed for that day. The petition was presented on the succeeding day. *Held* in apt time. (20.)

*Original Proceedings in Prohibition.*

Mr. JOHN L. EAST, Mr. A. M. BELCHER, Mr. HORACE N. HAWKINS, for petitioner.

Hon. FRED FARRAR, Attorney General, Mr. NORTON MONTGOMERY, Mr. FRANK C. WEST, Assistant Attorneys General, for respondents.

Mr. JUSTICE WHITE delivered the opinion of the court.

This is an original proceeding for a writ of prohibition against the District Court of the Third Judicial District, and Honorable Granby Hillyer, one of the judges thereof, sitting in and for the County of Huerfano, from proceeding with the trial of a cause there pending wherein the relators herein, John Burke and Charles Haines, are charged with having murdered one P. P. Lester in said county on the 29th day of April, 1914, and to require the said court or the aforesaid judge thereof to change the venue or call in another District Judge to preside as the judge of said court, at further hearings in the case, as provided by sec. 6963, *et seq.* R. S. 1908. An order to show cause why the prayer of the complaint should not be granted was entered of record, and subsequently served, whereupon the Honorable Granby Hillyer, judge of the District Court aforesaid, interposed a motion to dismiss the proceedings herein for reasons stated as follows:

First: That this court has not jurisdiction, for the reason that said petition does not show that the matters at issue are *publici juris.*

Second: That the petition does not state facts to entitle the petitioner to the relief demanded; and,

Third: That said petition does not show that the application for a change of venue was made in apt time.

The propriety of the remedy invoked is not questioned. On the contrary, it is conceded that if the facts set forth in the affidavits in support of the petition for change of judge are sufficient in law to disclose the prejudice, disqualification, or incompetency of Judge Hillyer, as provided by statute, and the matter involved in the criminal case pending against relators is *publici juris,* and the application for change of judge was made in apt time, the relief asked should be granted herein. We will, therefore, without more than incidental discussion of the remedy, proceed to consideration and determination of the questions raised and argued.

1. We have no doubt the matters involved in the crim-

inal case in which the change of the judge is sought are
*publici juris.* In fact, the entire people of the state in their
sovereign capacity are the plaintiffs therein, and the right
of society to have its laws, in relation to certain crimes, ob-
served and enforced is involved. Persons are charged with,
and tried for, the commission of crimes for the good of so-
ciety. Public policy requires that such be done, not solely
for the purpose of punishing the perpetrators of the of-
fenses, but to the end that others may be deterred from the
commission of like crimes. Nor can we conceive of anything
of graver public concern than whether or not those charged
with the commission of crime shall be tried before impartial
tribunals free from prejudice and bias. The first ideal in
the administration of justice is that the judge must be free
from bias and partiality. Men are so agreed on this prin-
ciple that any departure therefrom shocks their sense of
justice. A party may be interested only that his particular
case should be justly determined, but the state is concerned
not only for that, but also that the judiciary shall enjoy an
elevated rank in the estimation of mankind. Indeed, no one
can be charged with, and tried for, the commission of a
grave criminal offense but what all society, within the terri-
torial limits of the sovereignty that prosecutes, is in some
measure affected thereby. We are equally certain that when
the facts of a case disclose, in the manner required by statute
that a judge is prejudiced or otherwise incompetent to hear
or try a cause, but, nevertheless, proceeds in that regard,
the issues are not likely to be determined and the rights of
the parties properly protected and enforced in a court over
which he presides. *People ex rel. Lackey v. District Court,*
30 Colo. 123, 130, 69 Pac. 597.'

2.    In order to determine the sufficiency of the petition
for the change of judge and the affidavits in support there-
of, we must consider secs. 6963 and 6964, R. S. 1908. Section
6963 is as follows: "In any criminal cause pending in any
court of record of competent jurisdiction, the judge of said

court shall be deemed incompetent to hear or try said cause in either of the follows cases: * * * Third—When the judge is in anywise interested or prejudiced, or shall have been of counsel in the cause, such prejudice of the judge must be shown by the affidavit of at least two credible persons not related to the defendant." Section 6964 requires the judge, when incompetent to sit for any of the causes mentioned in the preceding section, to change the venue to some other court of competent jurisdiction in the same county, or in some other county, or to set the case down for trial at some day in term time or vacation, and notify and request the judge of some other court, having jurisdiction of a like offense, to try the case, and makes it the duty of the judge so requested to appear and hold the court at the time appointed for the trial of said cause. It, therefore, necessarily follows that when a person charged with a criminal offense in this state makes an application for a change of judge in the trial of his cause and brings himself properly within the provisions of the statute providing for change, the judge against whom the application is directed loses the right to adjudicate concerning the subject-matter in the given case, and all power in the premises except that reserved by the statute. In such case the court, with such judge presiding, is ousted of jurisdiction to proceed further with the cause, except to enter the order of recuse, change the venue to some other court of competent jurisdiction, or set the cause down for trial and notify and request the judge of some other court having jurisdiction of like offenses to try the case. Such is the construction which we have heretofore given to this statute. *Erbaugh v. The People,* 57 Colo. 48, 140 Pac. 188. We have also held, in common with other courts in construing similar statutes, that no inquiry may be had as to the truth of the facts set forth in the petition and affidavits. Thus in *Erbaugh v. The People, supra,* on page 52, in construing this statute, we said: "The petition and affidavits are conditions imposed by statute, upon a com-

pliance with which, if they are legally sufficient, the defendant is entitled to a change. In such a case the judge loses jurisdiction, except to grant the change, without any inquiry into the facts. The petition and affidavit must be proper and sufficient and the facts must be shown disclosing the prejudice of the judge. While he may pass upon the question of law involving the sufficiency of these matters, the question of the truth of the allegation is never tried. In this state, when a defendant brings himself properly within the provisions of the statute, the judge loses jurisdiction, except to grant the change, the statute relative to which, is mandatory and imperative."

And in *People, ex rel. Lackey v. District Court, supra,* it is held that "Where an application for a change of place of trial is made by a defendant, based upon a ground which entitles him to the change as a matter of right, the court to which it is addressed has no discretion except to grant the application. In such cases the court is ousted of jurisdiction to proceed further with the cause than to enter the order of removal," and will, by prohibition, be controlled in the premises and required to enter the order which should have been made. If such is the effect of an application for a change of place of trial based upon a ground which entitles the defendant to the change as a matter of right, the same effect follows an application for a change of judge based upon a like ground, and for denial of the right in either case the same remedy is available to an injured party.

In *Erbaugh v. The People, supra, Cantwell v. The People,* 138 Ill. 602, 28 N. E. 964, is, together with many other cases, cited. We quote from the *Cantwell* case, p. 604, as follows:

"The petition and accompanying affidavits complying with the statute, and such affidavits purporting to be made by reputable persons, residents of the county, not of kin to the defendant, etc., the right to a change of venue is abso-

lute.  The statute nowhere provides for the filing of counter-affidavits in such cases, as it does where the ground for the change of venue is the alleged prejudice of the inhabitants of the county.  It may be readily seen why such affidavits are allowed in the latter case but not in the former.  In the one case, there being no objection to the impartiality of the judge, he can fairly pass upon the question as to the prejudice of the people on affidavits *pro* and *con;* but the question being, is the judge himself prejudiced, there is, from the defendant's standpoint, no impartial tribunal to weigh the evidence and determine that issue.  It is doubtless true that a statutory right for a change of venue is liable to abuse, but that fact confers no power upon courts to limit or qualify the right."

Equally pertinent and convincing is the argument in *State v. Kent,* 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686, which case is also cited in *Erbaugh v. The People, supra.* It is there said, pp. 592, 593:

"  *   *   *   The language of the statute confirms our view that he is not to try this question.  This section contains two distinct provisions,—one relating to a change of venue on the ground that a fair and impartial trial cannot be had in the county   *   *   *, and the other referring to a change of judge.   *   *   *   The question whether a fair and impartial trial cannot be had in the county in which the action is triable *must* be settled by the judge.   *   *   * Having no interest in the question, the law very properly leaves it to him for decision.  That he may decide it, the statute provides that affidavits may be used before him to prove or disprove this fact.   *   *   *  But, when we come to that branch of the statute which relates to his own bias, nothing is said about his being satisfied of it, nor is there any provision made for the use on the application for a change of judges of any other affidavit   *   *   *.  Neither does the statute call for or permit the use of any other evi-

dence. These considerations make it clear that the judge is not to try the question of his own bias. The accused need not prove it to the satisfaction of the judge. * * * The judge so attacked cannot try the question of his own bias. Unless, therefore, the right to a change of judges is absolute on making the statutory affidavit, the protection of this salutary law is lost to the defendant, and its enactment was an idle deed."

In treating of the same subject, Bailey on Habeas Corpus, Vol. 2, pp. 1393, 1394, uses the following language: "Again, statutes in several jurisdictions, provide for a change of venue on the ground of prejudice of the judge. * * * The court has no discretion. Upon filing of such affidavits (as required by the statute) he loses all jurisdiction to proceed with the cause, and if he attempts to proceed prohibition will lie to restrain him." It must not be assumed, however, from the foregoing discussion and declarations of law that the mere statement or assertion in a petition for change of judge and in the affidavits in support thereof that such judge is incompetent or prejudiced, meet the requirements of the statute. On the contrary, the facts from which the incompetency or prejudice is inferred must be stated. We have always required as essential to a proper recusation, a statement of facts therein sufficient to disclose the incompetency of the judge.—*Hughes v. People,* 5 Colo. 436, 451; *Young v. People,* 54 Colo. 293, 297, 130 Pac. 1011; *Erbaugh v. People, supra.*

The change of judge is conditioned, not upon the actual fact of his prejudice, but upon the imputation of it. The facts set forth in the recusation must, for the purposes of the motion, be accepted as true, notwithstanding they may be known to the judge and all mankind to be false. The whole matter is left with the conscience of the petitioner and affiants, and when affidavits fulfilling the requirements of the statute are presented, the change must be made, and

the truth of the matter is not open to question. If an offense be committed in verifying and presenting the alleged facts, the perpetrators thereof may, perhaps, be punished under some provision of our law, but the courts, in considering the sufficiency of the application for a change of judge, can neither reject the pleading, nor disregard the facts alleged therein. They can only apply the law and test thereby the sufficiency of the facts alleged. The finding in such matter is a finding of law, and not of fact, and this is true whether it be the finding of the trial court or of an appellate tribunal. Should the trial court conclude that the petition and affidavits in support thereof are insufficient to require the change, and a reviewing or superior tribunal find the contrary, the question upon which the two tribunals have differed is of law, not of fact. Therefore, the finding of the trial court in such case can have no bearing upon the issue when presented to a higher tribunal. It is otherwise when the change of venue desired is from the county on account of the prejudice of the inhabitants thereof. In such case the statute, §§6965, 6966, R. S. 1908, provides for the filing of counter-affidavits and the trial judge necessarily passes upon the question in controversy as a matter of fact, and his finding in that regard is conclusive on all if he had the right conception of the law, and his conclusions are supported by the evidence or fair deductions therefrom. The object sought by the change of venue statute is to secure to a party charged with crime, a fair and impartial trial by a jury in a county uninfluenced by local bias or prejudice, and by a judge uninfluenced by bias or prejudice against the party charged. When the question involved is the alleged prejudice of the inhabitants of the county the judge is presumed to be entirely indifferent, and an issue of facts is, therefore, provided for, and the judge invested with power to hear and determine the same, but when it is sought to remove the judge because of his prejudice, the law-making power of our

state has not deemed it proper to vest in such judge any discretion in the premises; and the judge whose competency is so questioned can only pronounce the judgment of the law. He can not sit in judgment upon that which directly concerns himself. *State v. Kent, supra.*

The statute, by express terms, makes the judge incompetent to try a case if he is in any wise interested, or in any wise prejudiced, or if he shall have been of counsel in the cause. To be in any wise interested, or to have been of counsel in the cause, constitutes conclusive incompetency, and from the existence of those facts, or either of them, no other deduction can be made. No particular facts are recited in the statute as constituting prejudice, the other ground of incompetency, and it would, therefore, seem that if there are any facts and circumstances disclosed from which a deduction could reasonably be made that a judge has a leaning toward one side of a question involved, from other considerations than those belonging to it, or a bias in relation thereto which would in all probability interfere with fairness in judgment, he is incompetent to try the cause for he is then, within the meaning of the statute, prejudiced. This rule is declared in *People v. Findley*, 132 Calif. 301, 304, 64 Pac. 472, 473, in the following language: "The affidavit or affidavits must not only state facts, but the facts stated must establish to the satisfaction of a reasonable mind that the judge has a bias or prejudice that will in all probability prevent him from dealing fairly with the defendant." Moreover, in judging of the sufficiency of a showing for a change, we must bear in mind, as stated by this court in *Hughes v. People, supra,* that while necessary, material, and pertinent facts should always be stated, much less detail of facts will suffice when the application is based on the prejudice of the judge than when the prejudice of the inhabitants of a whole county is averred. With these observations in mind, we will proceed to consider the peti-

tion and affidavits for change of judge in the case of re-
lators; and to the end that the basis of our conclusions be
clearly evident we direct that the petition and affidavits for
change of judge presented to the trial court be published as
a footnote.*

As the statute requires that the showing of prejudice
of the judge shall be made by the affidavits of two credible
persons not related to defendants, and the affidavits filed in
support of the petition here involved, admittedly do not
recite therein some of the essential facts, but refer to and
verify all facts set forth in the petition, it is suggested that
the showing is fatally defective even though sufficient facts
were stated in the petition. The petition and affidavits in
support thereof were attached and filed. The affidavits, or
a sufficient number thereof, refer to and verify all the facts
contained in the petition. This we think sufficient, if in
such petition and affidavits proper facts are disclosed. The
rule was announced in *Ausmus and Moon v. The People,* 47
Colo. 167, 176, 107 Pac. 204, 208, 19 Ann. Cas. 491, in the
following language: "We are unable to appreciate the dis-
tinction between an affidavit made full and complete by
reference to an attached instrument, and an affidavit having
the particular matters so referred to embodied in the affi-
davit itself. Either is sufficient." The credibility of the
persons making the affidavits required by the statute will be
presumed, unless the contrary appears from the affidavits.
*State v. Spivey,* 191 Mo. 87, 90 S. W. 81. Besides, the peti-
tion specifically alleges that the affidavits in support thereof
are made by credible witnesses and the truth of the allega-
tions of the petition are verified. However, the real crux
of the controversy is whether the petition and affidavits re-
cite facts from which a reasonable person would therefrom
reach the conclusion that Judge Hillyer is in any wise dis-
qualified, within the meaning of the statute, to try the case.

We cannot commend the petition and affidavits in sup-

port thereof as models in this character of proceeding. They contain much which seems wholly irrelevant, and the petition is pregnant with legal conclusions. We think, however, that there is embodied therein sufficient recital of alleged facts to require the change of judge. It appears therefrom that an industrial conflict had existed in this state for a long time between the operators of coal mines and their employees; that the former leagued themselves together in the conflict and acted as a unit, and the latter did likewise under the direction and as members of the United Mine Workers of America, and were known as "strikers;" that the petitioners herein were members of such labor organization and employees of the coal operators, and were aligned with the miners in the strike; "that so bitter became the struggle that large numbers of battles and conflicts between armed forces occurred, and large numbers of men were killed and wounded;" that the cause of action wherein the change of judge is sought grew out of said strike, and is known as a "strike case," and is one among approximately fifty strike causes pending on the docket of the District Court in Huerfano County; that such cases embrace charges of murder, arson, burglary, and other offenses, alleged to have been committed by the striking miners; that all "strike cases" were instigated at the behest of and at the request of the aforesaid leagued "coal mining corporations who employed attorneys and detectives to institute and cause to be instituted said causes and to prosecute the same;" that Judge Hillyer, who had recently been appointed as judge in that district, had, prior to his appointment, been employed, from time to time, by the coal companies to assist in the prosecution of "strike cases," and appeared and made arguments in four of such cases in the aforesaid District Court of Huerfano County, and "was and is a strong and outspoken partisan in favor of the coal companies in their controversies with the miners, and repeatedly declared and stated that the

striking miners were outlaws, and should be denied the benefit of habeas corpus when arrested and held *incommunicado* by the militia;" that in the "strike cases" aforesaid pending in the District Court of Huerfano County he spent a great deal of time in securing affidavits in Prowers County, in the same judicial district, "to secure the transfer of striking miners' cases to said county," and in his argument insisted "that Prowers County inhabitants were not prejudiced against the strikers or their sympathizers, and that fair trials could be obtained in said county," and as the representative of said coal operators asked that the "strike cases" be transferred to Prowers County; that in some instances where attorneys for the strikers charged with crime, had secured affidavits from parties in Prowers County showing that the inhabitants of said county were prejudiced against the strikers, Judge Hillyer subsequently secured affidavits from the same parties wherein they changed their former statements, which affidavits were used upon the hearings for change of venue aforesaid; that it is the intention of the defense in the cause wherein the petitioners are charged with murder to apply for a change of venue to some other county than Huerfano on account of the prejudice of the inhabitants thereof, and to object to the case being transferred to the County of Prowers on account of the inhabitants of that county being so prejudiced against defendants that they could not secure a fair and impartial trial therein; that upon the hearing of the question in the District Court of Huerfano County as to whether or not Prowers County is a proper county in which to try the cause involved, the defendants therein will present to the court the identical affidavits as to the prejudice of the inhabitants of Prowers County, against these strikers, that were secured and used in the application for a change of venue in the aforesaid "strike cases" in which the said Hillyer appeared, and which affidavits were criticized and attacked by him by counter-

affidavits. In the petition for change of judge and affidavits in support thereof, other pertinent alleged facts appear.

We deem it unnecessary to determine whether from the facts alleged a reasonable person would reach the conclusion that Judge Hillyer had been of counsel in the case forming the basis of this suit, or in any other cause between the same parties, involving substantially the same facts and circumstances. Without regard thereto we are certain, from the facts alleged, that a reasonable person might very properly conclude that because of Judge Hillyer's interest and activity in a cause of similar character against the active associates of relators for similar offenses growing out of the same alleged controversies and in which causes certain issues were determined, that are involved and must be determined in the case against relators, and the determination of which issues, in part, at least, will depend upon the identical evidence which he attempted to overthrow and discredit in those cases, coupled with his alleged remarks and attitude against the class to which relators belong, and his relation to the active agencies alleged to be prompting the prosecutions in all the so-called "strike cases," were such that he has, within the meaning of the law, a bias or prejudice that would in all probability prevent him from dealing fairly with the relators, as defendants, in determining the questions of fact which the court must determine in the case, as to the prejudice of the inhabitants of Huerfano County and of the county to which the cause may be transferred, if the inhabitants of the former county are found to be prejudiced within the meaning of the statute. As stated in *People v. Haas,* 105 App. Div. 119, 93 N. Y. Sup. 790, 792: "However upright the judge, and however free from the slightest inclination but to do justice, there is peril of his unconscious bias or prejudice, or that any former opinion formed ex parte may still linger to affect unconsciously his present judgment, or that he may be moved or swayed unconsciously

by his knowledge of the facts which may not be revealed or stated at the trial, or cannot under the rules of evidence. No effort of the will can shut out memory. There is no art of forgetting. We cannot be certain that the human mind will deliberate and determine unaffected by that which it knows, but which it should forget in that process." In each of the cases in which Judge Hillyer actually appeared, the issue was made as to the prejudice of the inhabitants of Huerfano and Prowers Counties against striking miners who were charged with the commission of crimes that grew out of the industrial conflict. The judge against whom the proceeding here is directed was an employed attorney to establish one side of that issue. He interviewed parties qualified to testify upon such issue, secured their affidavits thereon, presented the same in the cases, and contended therein, before the court over which he now presides, that the evidence so presented overcame the evidence and contention of those representing the contrary side of that issue. He was not acting therein as a disinterested judge determining the question involved upon the evidence there presented. In the case of relators the identical issue must be determined by the judge who presides, and it is alleged that in behalf of petitioners, it will be submitted, in part, at least, upon the identical evidence. Upon that issue, as attorney, Judge Hillyer had, if the facts alleged are true, become a partisan, and manifested a partisan feeling evidencing a prejudgment of the matters in issue. While it has been said that prejudice against the cause or defense of a party alone is not a disqualifying prejudice, and the prejudice which will disqualify a judge is prejudice against the party to the cause, nevertheless where the judge has manifested a partisan feeling evidencing a prejudgment of the matter in issue, he is disqualified.—*Massie v. Commonwealth*, 93 Ky. 588, 20 S. W. 704; *People v. Elmendorf*, 51 N. Y. App. Div. 173, 64 N. Y. Supp. 775; *State, ex rel. Bar-*

*nard v. Bd. of Ed.*, 19 Wash. 8, 52 Pac. 317, 40 L. R. A. 317, 67 Am. St. 706, 23 Cyc. 585, 586.

Under such circumstances, the judge is unable to weigh the evidence and determine with fairness between the parties, and this, in law, is prejudice. *Keen v. Brown*, 46 Fla. 487, 490, 45 So. 401. In any law suit where the issues involved are not determined alone from considerations that belong to them, there is prejudice within the meaning of the law, and such prejudice is necessarily against the party injured. It could not be otherwise. The injury sustained by the party is the result of the prejudice. Furthermore, where the issues involved require the judge to pass upon the facts, and it is solely a question of fact which is presented for his consideration and determination, the same test of his qualification to determine the matter should be applied that would be in determining the qualification of jurors in the premises. As said in *State ex rel. Barnard v. Board of Education, supra*, p. 13: "While some courts have decided that the test of the respective qualifications of judges and jurors are not the same, yet in a case of this kind (change of judge), where the judges pass upon the facts, and it is a pure question of fact which is presented for their consideration and for their determination, we see no good reason why the test of qualification should be different; for the judge in this case is in reality a juror passing upon questions of fact." A court would surely not permit a prospective juror to remain in the box, and determine an issue of fact between litigants, when it was disclosed that such juror had previously been employed and actively engaged in establishing either side of that identical issue. The facts in this case, in their effect as to the disqualification of the judge, are, in legal effect, like unto the facts in *Kentucky Journal Pub. Co. v. Gaines*, 139 Ky. 747, 751, 110 S. W. 268, and the language there used in sustaining the sufficiency of the showing for a change of judge is very pertinent here. In the opinion therein, p. 270, it is said:

"The affidavit not only states that the judge had a political bias and enmity toward the defendant, but that he had openly asserted his belief in the genuineness of the signature of Percy Haly to the letter, which was the crucial question in the libel suit; that the judge had been in frequent communication with the plaintiff concerning the publication of the letter in the Crusader, a newspaper under the control and management of the plaintiff. It further shows that the alleged libelous publication and the suit concerning it grew out of and was the direct result of a bitter political campaign which had just been waged between Gov. Beckham on the one side and Senator McCreary on the other for the office of United States Senator for Kentucky. We are of opinion that the statements in this affidavit thoroughly disqualified the regular judge from presiding in the trial of the case. We do not mean to say that in our opinion these statements are true, for their truth cannot be inquired into in this action. All that the statute, as construed by this court, * * * requires is that the affidavit should allege such facts which, if true, show that the trial judge will not, or may not, afford the litigant a fair and impartial trial of his case. Manifestly, if the trial judge had openly expressed an opinion of the genuineness of the letter, which was the real question in the litigation, and if he had been, as charged, in communication with the plaintiff concerning its publication in a newspaper, there can be no doubt that the judicial mind was not in that state of impartial equipoise between the litigants which is required to afford a fair and impartial trial."

If the fact be, that a judge is biased or prejudiced against a litigant because he is a member of a certain organization or belongs to a particular class, it would seem to disqualify him as certainly and completely in passing upon questions of fact in relation to that party's rights as if he were prejudiced or biased against him for any other reason.

As an example, consider the far-reaching effect of religious and race prejudices disclosed on the pages of history. The rule is announced in *Powers v. Commonwealth,* 114 Ky. 237, 70 S. W. 644, 651, in the following language: "If the fact be that the judge is biased or prejudiced against the litigant because of politics, it would seem to disqualify him as certainly and completely as if he were prejudiced or biased against him for any other reason. The objection is a state of bias which destroys impartiality, whatever may be its cause." The fact of prejudice does not necessarily imply that the judge would be intentionally unfair, or that he would knowingly disregard the law or the evidence to the prejudice of the party charging it. In the case at bar relators expressly disclaim any intent upon their part to challenge the honesty or intentions of the judge, and no intentional unfairness or wrong will be imputed to Judge Hillyer. However, if the alleged facts stated in the application for a change of judge be true, he may imperceptibly to himself, however honest and pure his intentions, be unable to give a fair and impartial trial to these defendants. Prejudice is a mental condition or status not susceptible of direct and positive proof. As a rule it is the result of no dishonest motives, and he whose acts are affected by prejudice is usually unconscious of its influence. The greatest delicacy should constantly be observed on the part of judges, to the end that they never act where there could be substantial doubt whether they would be free from bias. The courts must observe such proprieties not only because they are right, "but in order to retain public respect and secure willing and ready obedience to their judgments." *Nordloh v. Packard,* 45 Colo. 515. "Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, in whose keeping are placed not only the financial interests, but the honor, the liberty and the lives of its citizens, and it should

see to it that the scales in which the rights of the citizens are weighed should be nicely balanced, for, as was well said by Judge Bronson in *People v. Suffolk Com. Pleas*, 18 Wend. 550: 'Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.'" *State, ex rel. Barnard v. Board of Education, supra.* This duty our state has discharged by enacting the statute here under consideration.

It is true that the petition for change of judge, and affidavits in support thereof, do not disclose the title of the "strike cases" in which Judge Hillyer appeared and in which the aforesaid evidence was used upon the application for change of venue, nor does the record here contain the affidavits upon which that application was made. In considering this feature, however, it must be remembered that it is alleged that those cases were pending in the District Court of Huerfano County, the very court in which the case of petitioners herein is now pending; that the affidavits were on file therein, and that Judge Hillyer, then attorney, argued as to the sufficiency of such affidavits in the aforesaid court in each case. This we think sufficient under the rule heretofore announced by this court in *Hughes v. People, supra.* Whether the affidavits presented in those cases contained sufficient facts to require a change of venue from Huerfano County or to establish either the prejudice or lack of prejudice in the inhabitants of Prowers County against striking miners charged with crime, is wholly immaterial in judging the sufficiency of the showing made in this case. The question of whether or not a change of venue from Huerfano County to some other county should be granted or refused on account of the prejudice of the inhabitants of any such county, can only be determined, in the first instance, by the presiding judge in the case wherein the petition for a change is presented, and what we might think herein as to the effect

that should be given to evidence presented therein is of no concern in the determination of the matter here involved.

3. We think the contention that the application for a change of judge was not filed in the court below in apt time is without merit. It appears from the record before us that the first term of the District Court of Huerfano County, after the arrest of petitioners, commenced on the 14th day of June, 1915, the same being an adjourned term of the February, 1915, term; that Judge Hillyer had been recently appointed one of the judges of the court, and appeared for the first time in said court on the aforesaid 14th day of June; that on said day the petitioners appeared in said court before any action had been taken or made by Judge Hillyer in said case wherein petitioners stood charged with murder; that before the case was called upon the docket the petitioners announced that they desired to present to the court their petition for a change of judge, and it was thereupon agreed between the defendants and the people that the cause should be passed until the following day at which time the petition for change of judge and the affidavits in support thereof were filed. As said in *People v. The District Court, supra,* ordinarily, prohibition only lies to prevent the lower court from proceeding further with the cause, but where this would not give the relator the relief to which he is entitled, the writ may direct that all proceedings had in excess of jurisdiction be quashed and the order entered which should have been. The writ will, therefore, issue directing the respondent court with Judge Hillyer presiding to proceed no further with the cause than to set aside the judgment denying the application for a change of judge and enter an order as required by statute, §6964, *supra.*

Decision *en banc.*

GABBERT, C. J., and GARRIGUES, J., dissent.

GABBERT, C. J., dissenting.

The application for a change of venue or to require the Hon. Granby Hillyer to request another judge to preside at the trial is based entirely upon the alleged prejudice of Judge Hillyer. The affidavits supporting the application are purely *ex parte,* and are the most unsatisfactory evidence with which the courts have to deal, when, as stated in the majority opinion, the statute inhibits counter affidavits being filed. The right of a defendant in a criminal action to a change of venue, or to require the judge of the court in which the action is pending to designate another judge to try the cause, on account of his prejudice, is statutory. The change contemplated by the statute causes delay and expense. The right thus conferred for alleged prejudice of the judge is so liable to abuse as to require a rigid construction of the provisions of the statute, and it is only when the necessities of justice demand it that a change should be made. Otherwise a great wrong is perpetrated upon the public. This court, therefore, in *Young v. The People,* 52 Colo. 293, 130 Pac. 1011, has ruled that the affidavits supporting the application must state facts showing the prejudice of the judge, and that such facts must be sufficient in law to require the change.

The province of the judge at a trial of a criminal action is limited to an interpretation of the law. The jury determines the facts. If the judge errs in the admission or rejection of testimony, or in giving or refusing instructions, his rulings in these respects can be reviewed by this court. The constitution requires him to take an oath to support the federal and state constitutions, and to faithfully discharge the duties of his office, hence it follows that the facts upon which the application is predicated must be so direct, positive, and unequivocal as to clearly show such prejudice as will prevent him from giving the defendant a fair and impartial trial. *State v. Chapman,* 1 S. D. 414, 47 N. W. 411, 10 L. R. A. 432.

The statute provides, so far as necessary to con-

sider, that a judge shall be deemed incompetent to hear or try a criminal cause when he is any wise prejudiced. As thus employed, what does prejudice mean, or in what circumstances is a judge rendered incompetent to hear or try a criminal action because he is "anywise prejudiced?" An individual may be said to be prejudiced as the result of political affiliations, or religious belief, or on account of nationality or race, or from what he has read or heard regarding a transaction. In short, innumerable reasons might be assigned why he was prejudiced, and in this sense the word has many varied significations. Clearly the General Assembly never intended to give the term such an unrestricted meaning as would lead to absurd results by permitting a defendant to secure a change of judge or venue for any reason based upon alleged prejudice, except a substantial one. In other words, it is not the purpose of the statute that any prejudice, however trivial or unimportant, should operate to disqualify a judge, or render it improper that he should preside in a case. And so we find that in other jurisdictions statutes which provide in general and unrestricted terms for the disqualication of a judge for prejudice, the term, by the great weight of authority, has been construed to mean personal prejudice against the defendant. 23 Cyc. 585; *Conn v. Chadwick,* 17 Fla. 428; *Turner v. Commonwealth,* 2 Met. (Ky.) 619; *Western Bank v. Tallman,* 15 Wis. 92; *State v. Parmenter,* 70 Kan. 513, 79 Pac. 123; *State v. Johnson,* 104 N. C. 780, 10 S. E. 257.

Analyzing the affidavit of the defendants, we find it is stated therein that it is not the intention to challenge the honesty or intentions of Judge Hillyer, but that he is so prejudiced against the defendants that it will be and is impossible for him to act fairly and impartially. This statement is a concession that Judge Hillyer has no intention to deal with the defendants in his official capacity otherwise than fair, and in the face of this admission it ought to be

very clear from the facts stated he has such a personal prejudice against them that he will unconsciously be unable to preside at their trial in a fair and impartial manner. The affidavit then recites a history of the strike; incidents connected therewith; that the defendants were aligned with the miners engaged in the strike; that they are members of the organization known as the United Mine Workers of America, and that conflicts between strikers and those engaged by the coal companies to aid in breaking the strike, occurred. There is no statement that defendants engaged in any of these conflicts, or that Judge Hillyer took any part in the physical encounters mentioned. Certainly these statements do not indicate any personal prejudice on the part of the judge against the defendants. It is then stated that the charge against the defendants is for a crime alleged to have grown out of the strike, which cause, among others, was instigated by the coal companies, who employed attorneys and detectives who instituted and caused to be instituted such causes, and to prosecute the same; that there has been intense feeling and prejudice against the defendants on account of the offense with which they are charged; that reports have been published and circulated charging the defendants with that offense; that Judge Hillyer has heard and read these reports and has believed they were true, and that defendants are guilty, and, therefore, became, and ever since has been so deeply prejudiced against defendants that he is unable to give any defendant in a strike case a fair and impartial trial or a fair and impartial hearing. The companies had the right to take the steps they are charged wtih having taken if they had cause to believe that the parties charged with offenses were guilty. There is no intimation that they are not acting in good faith, but the mere fact that these companies may have caused such prosecutions to be instituted, whatever may have been their motives, does not in any manner disqualify Judge Hillyer. That feeling

and prejudice exists against defendants as the result of the offense with which they stand charged, or that reports regarding it have been published, are conclusions of affiants. The contents of such reports are not set out. But aside from this the assertion that Judge Hillyer, by reason of such reports, believes the defendants guilty is not supported by the statement of a single fact upon which to base it. Besides it has been ruled that the opinion of a trial judge that a defendant is guilty does not constitute prejudice under the statute. *State v. Morrison,* 67 Kan. 144, 72 Pac. 554; *Ingles v. McMillian, Judge,* 5 Okla. Crim. 130, 113 Pac. 998, 45 L. R. A. (N. S.) 511, is a well considered case on the subject. The judge had heard an application of the defendant, who was charged with murder, to be admitted to bail, which was denied. The judge heard the testimony touching the guilt of defendant, and it was claimed that, having denied bail, he necessarily concluded the defendant guilty, and was therefore prejudiced and disqualified to try the case. In addition it was stated in the affidavit the judge had said, after hearing the testimony, that the defendant was guilty of a cold blooded murder. The court ruled that prejudice, in so far as it relates to the judge who presides at the trial, does not include his opinion as to the guilt of the defendant. To the same effect is *State v. Lockridge,* 6. Okla. Crim. 216, 118 Pac. 152, 45 L. R. A. (N. S.) 525, Ann. Cas. 1910, 251. In each of these cases the reason given why the opinion of the judge regarding the guilt of the defendant does not constitute prejudice, within the meaning of the law, is that he does not try the facts, but simply passes upon the questions of law presented.

The affidavit then continues to the effect that Judge Hillyer is a strong and outspoken partisan in favor of the coal companies, and has repeatedly declared and stated that the striking miners were outlaws and should be denied the benefit of habeas corpus when arrested, and held incom-

municado by the militia, and again states it would be impossible for him to sit with calm and impartial judgment at their trial, and that he has a deep and lasting prejudice against the United Mine Workers of America. When facts are presented on oath in support of an application for a change of judge or venue based on the prejudice of the judge, they should be stated in a manner so direct, positive and unequivocal that if they are untrue the affiant may be held accountable for swearing falsely. *Conn v. Chadwick, supra.* The statements under consideration lack these essentials. That Judge Hillyer is a partisan of the coal companies is but the conclusion of the affiants. When, and where, or to whom he made statements attributed to him that the striking miners were outlaws, and should be denied the benefit of habeas corpus when arrested by the militia are not stated. If these statements are untrue it is manifest they are so indefinite as to time, place and the persons to whom they were made, that a charge of perjury could not be predicated thereon, and for this reason should be wholly disregarded, so that the averment to the effect that it is impossible for the judge to preside with calm and impartial judgment, as well as the statement that he entertains a deep and lasting prejudice against the United Mine Workers of America, are but conclusions of the affiants and not based upon facts as the law requires.

The affidavit then reiterates that the coal companies have waged a war against the striking miners in the courts by employing attorneys and detectives to prosecute and testify against them, and charge them with crimes. It also states that such attorneys and detectives have been employed to defend armed men imported by them, who were in turn charged with crimes; that pursuant to this plan the coal companies have had arrested and charged with crime many hundreds of striking miners, including the defendants, which causes are now pending in the courts; that in these

prosecutions the companies are furnishing counsel and detectives; that they now have on their staff a great number of attorneys, naming them, actually engaged in the work of attempting to convict the strikers; that among the attorneys employed from time to time in the legal warfare was Judge Hillyer, recently appointed judge; that on behalf of the coal companies he appeared in court in four criminal cases against strikers, and in that capacity made an argument in those cases; that he also spent a great deal of time in the County of Prowers as the paid attorney of the companies to secure affidavits to be used in such causes, and that his employment for these purposes was solely through the chief counsel of the companies. We must assume that the employment of Judge Hillyer, and his participation in the cases, occurred before he was appointed judge of the third district. It is not charged that he was employed by the coal companies in the case against affiants, or that he ever took any part therein. The titles of the cases in which it is alleged he was employed and made arguments are not given. The date he was employed is not stated. Neither is there any statement regarding the character of the affidavits it is said he secured. All that can be deduced is that at some time and place Judge Hillyer was employed by the coal companies to assist in the prosecution of cases against striking miners, not these affiants, and because his former clients are interested in the prosecution of the affiants, he is therefore so prejudiced against them as to disqualify him from presiding at their trial. Such a deduction cannot be fairly made. The coal companies are not parties. They may be interested in the prosecution of the defendants. The cases may be similar to those in which Judge Hillyer was employed, but this does not in law indicate any prejudice on the part of the judge as would prevent him from observing the obligations of his official oath, which requires him to accord the defendants a fair and impartial trial. Then again

the statements under consideration are so indefinite that for reasons already given they should be wholly disregarded.

The affidavit concludes by stating that it is the intention of defendants to apply for a change of venue from Huerfano County on account of the prejudice of the inhabitants of that county, and to object to the cause being transferred to the County of Prowers on account of the prejudice of the inhabitants of that county against the defendants; that Judge Hillyer was employed by the coal companies to obtain affidavits to secure the transfer of striking miners' cases, other than those against the defendants, to that county, and in the District Court of Huerfano County, on behalf of the coal companies argued and insisted that the inhabitants of Prowers County were not prejudiced against the strikers or their sympathizers, and requested that those cases be transferred to Prowers County; that on the hearing for a change of venue the defendants will present the identical affidavits now on file in the other cases referred to, in support of their application for a change of venue; that in some instances affidavits secured by counsel representing the strikers in the other causes showing the prejudice of the inhabitants of Prowers County against them, Judge Hillyer thereafter secured affidavits from the same parties and filed them in court in which the affiants changed or attempted to change their former statements; that in those cases Judge Hillyer personally drew a large number of affidavits in some of which he attacked counsel for striking miners, and charged them with having employed improper methods in obtaining affidavits from residents of Prowers County; that counsel for defendants filed rebuttal affidavits, justifying their conduct, and attacking the affidavits filed by Judge Hillyer, and that all these matters were reviewed in argument by counsel at the time Judge Hillyer appeared as attorney for the coal operators. It is then stated that it will become the duty of the judge who presides in the cause to

pass upon the question of whether a change of venue from
Huerfano County should be granted, and if so to what county
it shall be transferred; whether or not Prowers County is
a proper county in which to try the cause, and that it would
be manifestly improper for Judge Hillyer to determine a
question as to which he represented the coal companies in
other cases, and should he sit as judge in the case he would
have to weigh and pass upon affidavits which as counsel for
the companies he has attacked by counter affidavits and ar-
gument. This part of the affidavit is merely argumentative
or a statement of conclusions, and whether or not it states
any facts showing prejudice must be determined from what
precedes it. How the affidavits referred to and filed in an-
other case can be used by the defendants in their case is not
explained. An affidavit setting up prejudice of the inhab-
itants of the Counties of Huerfano and Prowers against a
defendant in one case, cannot establish such prejudice
against another defendant in another case, and it is there-
fore apparent that the statement to the effect that Judge
Hillyer must pass upon and weigh the affidavits mentioned,
which he attacked by counter affidavits and argument, can-
not be true, and hence the portion of the affidavit under con-
sideration states nothing whatever to establish prejudice on
the part of the judge. If, however, this objection is waived,
the statements upon which prejudice is predicated are im-
material and irrelevant. It will be observed that what pur-
ports to be a statement of facts is in the most general terms.
The causes in which the affidavits were filed which defend-
ants say they will use in their application for a change of
venue from Huerfano County and resist the transfer of the
case to Prowers County, as well as the affidavits said to have
been secured by Judge Hillyer, are not mentioned by title
or number. The contents of such affidavits are not stated.
If the statements regarding these matters are untrue, how
would it be possible to hold the affiants responsible for

swearing falsely? Affiants say that it is their intention to move for a change of venue from Huerfano County on account of the prejudice of the inhabitants of that county against them, and resist the transfer of the case to Prowers County for the same reason. If the statement of an intention to move for a change of venue on the ground of prejudice, and object to a case being transferred to another named county upon the same ground, is proper to consider, it should definitely appear by apt averments that conditions exist which warrant the carrying out of such intention. It is not stated that the inhabitants of either county are prejudiced against the defendants. Neither is it stated that the prosecution will resist an application for a change of venue, or insist that the cause be transferred to Prowers County, so that whether any question will be presented to Judge Hillyer on this score is mere conjecture. Defendants have not made any application for a change of venue, or taken any steps to resist sending their case to the County of Prowers. They merely state it is their intention to take these steps. Their intention may be abandoned. In order to raise the question of whether or not, in any circumstances, facts are stated in the part of the affidavit under consideration which disqualify Judge Hillyer they should have presented an actual case, by doing that which they say it is their intention to do in connection with their application for change of judge, and not one which may never materialize. An application for change of judge ought not to be held sufficient except for actual conditions, and it is respectfully submitted that the majority opinion has ruled the application should have been sustained upon a question not in the case, but which defendants say will be. In other words, ruled that it is sufficient upon a proposition which the defendants may abandon, or which so far as appears by the affidavit may never arise, because the prosecution may not take issue on it, and thus ruled that defendants are entitled to a change of judge for a reason which may never exist.

In brief an analysis of the affidavit fails to disclose a single fact from which the conclusion can be deduced that Judge Hillyer is prejudiced against the defendants. The history of the strike does not. The statement that he believes the defendants are guilty is no more than the opinion of the defendants. That he is a partisan of the coal companies or is prejudiced against the organization of which defendants are members is simply the opinion of the affiants. Statements intended to establish prejudice, even if sufficient for this purpose, are so indefinite as to time and place and the persons to whom made, that affiants could not be held accountable for swearing falsely. Judge Hillyer was never employed in a case against the defendants. It is said he was employed in other cases against striking miners, but these cases are not mentioned by either title or number. It does not appear that he will be required to pass upon affidavits which it is alleged he attacked in those cases. The coal companies are not parties to the case against the defendants. It is not averred that the inhabitants of either Huerfano or Prowers Counties are prejudiced against them. They have not made an application for a change of venue from Huerfano County, consequently are not in a position to request that their case should not be transferred to Prowers County. It does not appear that the prosecution will resist an application for a change of venue from Huerfano County if one were made, or insist that the case be sent to Prowers County, and therefore, whether Judge Hillyer will be required to pass upon the question of venue or the prejudice of the inhabitants of either county mentioned is not presented. The affidavit has been so far considered upon the theory that personal bias and prejudice upon the part of Judge Hillyer against the defendants has not thereby been shown, but even if the existence of prejudice against strikers generally and the United Mine Workers of America could be said to show prejudice against the defendants, their affidavit is wholly

insufficient to establish such prejudice for the reasons given
in considering it from the view point that under the law
personal prejudice of the judge against the defendants must
be shown.

The affidavits supporting the affidavit of defendants add
nothing to it. In one of them it is stated that affiant has con-
versed with Judge Hillyer, and that in his judgment the
judge is so prejudiced against defendants that they cannot
have a fair and impartial trial before him, and that a change
of judge is necessary to a fair and impartial hearing and
trial. This is but the opinion or conclusion of the affiant,
and not a statement of facts. In another affidavit it is
stated that affiant has conversed with Judge Hillyer, and
these conversations disclosed that he was biased and preju-
diced as stated in the affidavit of defendants. This again
is but a conclusion. In the next affidavit it is stated that
affiant has made a careful investigation for the purpose of
ascertaining whether Judge Hillyer is biased and preju-
diced against defendants, and whether a fair and impartial
hearing and trial can be had before him, and that in his
judgment the judge is so biased and prejudiced against the
defendants that it will be impossible for him to grant a fair
and impartial hearing and trial in the cause. It is only nec-
essary to mention that facts must be stated from which bias
and prejudice on the part of the judge can be deduced. In
the final affidavit it is said that affiant has conversed with
the judge; that in these conversations he was outspoken and
emphatic in condemning strikers; that he was a strong par-
tisan on the part of the coal companies, and in the judgment
of affiant is so deeply prejudiced that no member of the
striking miners or their sympathizers can have a fair and
impartial trial or hearing before him. Prejudice and bias
must be made to appear from facts, and cannot be established
from conclusions, or the judgment of the affiant. It will
never be presumed that a judge is biased or prejudiced, and

when it is alleged or suggested that he is, it must be made clearly and affirmatively to appear. With the utmost deference to my esteemed associates it is respectfully submitted that the rules by which to determine bias and prejudice on the part of a judge are shown, have not been applied. The affidavits are misleading, and in the judgment of the writer are a covert and unjust attack upon Judge Hillyer, wholly wanting in such a statement of facts as are necessary under the statute to disqualify him from presiding in the case. They are a mere hotchpotch of conclusions and opinions, mingled with indefinite, immaterial statements and innuendos, not a single paragraph of which, nor taken together as a whole, establish prejudice on the part of Judge Hillyer, and on account of their character and the irrelevant nature of their contents demonstrate the necessity for a rigid construction of the statute. Of course a defendant in a criminal action is entitled to have his case heard and tried by a judge who is not biased or prejudiced against him, but when he seeks a change of judge or venue upon the ground that the judge is prejudiced he must establish it by sworn facts as the law requires. In my opinion the ruling of Judge Hillyer that the petition and affidavits did not state facts showing that he was disqualified to sit in the case was correct, and should be sustained if that question is properly here for consideration.

In the majority opinion it is said that the affidavits being sufficient, Judge Hillyer was ousted of jurisdiction. *Erbaugh v. The People* is authority for this declaration. The writer did not concur in the opinion in that case on that question, but accepting it as correct, nevertheless, the sufficiency of the affidavits cannot be tested by proceedings in prohibition. Under the statute a presiding judge may be rendered incompetent upon the ground of prejudice. This, however, does not oust the court of jurisdiction. It merely disqualifies the judge. He has authority in the first instance

to determine the sufficiency of the application.   If he errs
the court still has jurisdiction of the case, consequently pro-
hibition will not lie for such error, because that remedy can
only be invoked when an inferior tribunal is exercising a
jurisdiction it does not possess or is exceeding its legitimate
powers.   The writ of prohibition cannot be converted into
a writ of error, so that the only method by which the ruling
on an application for change of judge can be reviewed is by
writ of error after the trial of the cause is concluded.   The
application for a change of place of trial is entirely differ-
ent from one, the purpose of which is to disqualify the judge
for prejudice.   The first directly challenges the jurisdiction
of the court, the latter merely goes to the competency of the
judge, which by the very terms of the statute, even if suffi-
cient, does not oust the court of jurisdiction.   In other words,
one raises the jurisdiction of the tribunal, the other is lim-
ited to the competency of the presiding judge.   For these
reasons the proceedings should be dismissed.

The writer is authorized to state that GARRIGUES, J.,
concurs in this opinion.

*The petition for change of judge and affidavits referred to in the
opinion, are as follows:

"State of Colorado, County of Huerfano.—ss.

In the District Court.

No. 1605.

THE PEOPLE OF THE STATE OF COLORADO, *Plaintiff*,

vs.

JOHN BURKE AND CHAS. HAINES, *Defendants*.

PETITION FOR CHANGE OF JUDGE.

Come defendants in the above-styled cause, John Burke and Chas.
Haines, and respectfully petition the court to call in some other judge than
the Honorable Granby Hillyer to hear and determine the matters and pro-
ceedings and to try the cause, should it be tried, because of and on account
of the interest and prejudice of the Hon. Granby Hillyer, judge of this court,
against defendants, and on account of the said judge being disqualified by

reason of his having been employed by certain coal companies, as hereinafter mentioned, and in support of this petition state:

1. That the said judge is incompetent to try or hear the cause and incompetent to hear any question in the cause.

2. That the said judge is biased and prejudiced against these defendants.

3. That the said judge is so biased and prejudiced against these defendants that they cannot have a fair and impartial trial or a fair or impartial hearing before said judge.

4. That said judge is so interested in the matter of this cause, and has such feeling in the cause, and in matters surrounding and connected with the cause, and in its prosecution, that defendants cannot have a fair and impartial hearing or trial before said judge.

5. That the said judge has, as is hereinafter alleged, been employed by and has acted as counsel in numbers of cases in which certain coal companies were employing counsel to prosecute miners engaged in the coal mining strike, which disqualifies him from sitting in this case.

In asking for a change of judge, it is not intended by this petition, or the affidavits in support thereof, to challenge the honesty or intentions of the said judge, but it is alleged that the said judge is so prejudiced against defendants that it will be and is impossible for him to act fairly and impartially in the cause.

That since September 22, 1913, and until recently, there has been in existence in the southern Colorado coal fields, including the County of Huerfano, a coal strike of a large number of coal miners belonging to the United Mine Workers of America. On the other side there have been leagued together the coal operators, embracing great and influential corporations, to-wit, The Colorado Fuel and Iron Company, The Victor-American Fuel Company, The Rocky Mountain Fuel Company, and other coal corporations owning and controlling many millions of dollars' worth of property, which companies have great and untold influence in said counties. That in and during said strike said companies have bought and brought into the state large numbers of deadly machine guns and other weapons, and also imported large numbers of men, commonly known as gun-men, to aid said companies in breaking said coal strike. That each side had many sympathizers and partisans, and the conflict resulted in the bitterest struggle that has ever arisen between capital and labor in the United States. That so bitter became the struggle that large numbers of battles and conflicts between armed forces occurred and large numbers of men were killed and wounded. That in one instance, commonly known as the "Ludlow Massacre," the tent-colony homes of a large number of strikers were burned to the ground and numbers of the wives and children of striking miners were suffocated and burned to death. That said armed conflicts kept up until the United States troops were sent into the field. That defendants belonged to said labor organization and were aligned with the miners in their strike. That the above-styled cause is a cause growing out of or alleged to have grown out of said strike, and

the defendants are accused of an alleged crime claimed to have grown out of said strike, and the cause is what is known as a strike case, being one of about fifty strike causes now on the docket of this court, which strike cases embrace alleged charges of murder, arson and burglary and other offenses alleged to have been committed by the striking miners; all of which cases were instigated at the behest of and at the request of said coal-mining corporations who employed attorneys and detectives to institute and cause to be instituted said causes and to prosecute the same.

That there has been the greatest and most intense feeling and prejudice against defendants on account of the alleged offenses charged in the above-styled cause, and that many reports have been published and circulated charging said defendants with said crime. That the said judge has heard and read, and had told him, and has believed in the truth of, said reports and believed defendants guilty, and thereupon became and has ever since been and now is deeply prejudiced against defendants, to such an extent that he is unable to give any defendant in said strike causes a fair and impartial trial, or a fair and impartial hearing. That the said judge was and is and has been a strong and out-spoken partisan in favor of the coal companies in their controversies with the miners, and a strong and outspoken partisan on the side of the coal companies in matters that have occurred, and has repeatedly declared and stated that the striking miners were outlaws, and should be denied the benefit of habeas corpus when arrested and held *incommunicado* by the militia. That it would be impossible for said judge to sit with calm and fair and impartial judgment on the hearings and trials of defendants. That he has a deep and lasting prejudice against the United Mine Workers of America. That the said coal companies hereinbefore mentioned, in addition to waging a war upon the striking miners by the use of machine guns and imported and armed gun-men, also started at the outbreak of this strike, and have since continued, a war against the striking miners in the courts, by employing and paying members of attorneys and detectives to prosecute and testify against striking miners for alleged crimes, and to charge them with crimes, and to appear for and defend, for the companies, said armed men imported by them, who in turn were charged with crime.

That the said coal companies, pursuant to this plan, have had arrested and charged with crime many hundreds of striking miners, including the defendants in this cause, and there are now pending in the courts criminal causes against several hundred of said miners. In all of these prosecutions the said corporations are furnishing counsel and detectives, paid by them. That said coal companies have had and have now on their staff, a large number of attorneys engaged actively in said work of attempting to convict the strikers, and that in recent trials and prosecutions held at Pueblo where strikers were charged with alleged murder of mine guards, four attorneys, to-wit, Hon. Jesse G. Northcutt, Thomas H. Devine, Charles Hayden and George C. Manly, appeared in court for the coal companies and openly admitted that they were receiving large compensation from the coal com-

panies for appearing. That among the attorneys who have been employed from time to time by the coal companies to assist in this said legal warfare is the Hon. Granby Hillyer, recently appointed judge of this district. That on behalf of said coal companies the said judge appeared in this court as the representative and paid attorney of and on behalf of the coal companies in four criminal cases against strikers, nominally on behalf of the people, but really, in truth and in fact, on behalf of and under the pay of said coal companies, and as such he made an argument as their attorney in said cases.

That the said judge also spent a great deal of time working in the County of Prowers, in this judicial district, as the paid attorney for said coal companies, and in securing for them affidavits to be used in said criminal cases. That defendants have no way of knowing the amount of money paid by the coal companies to the said judge prior to his appointment as judge, for his said service as attorney for said coal companies, in aiding them in their legal warfare, but upon information and belief allege that he was paid by said coal companies a large sum of money.

It is respectfully submitted that the said judge should not, after being appointed judge, sit in cases against strikers where the said coal companies are actively prosecuting; and these defendants allege that in this case the said coal companies are hiring and have hired attorneys to work up the evidence against these defendants, and are hiring and have hired detectives to assist the prosecution in the cause. That the said judge, while he appeared in the name of the people of the State of Colorado, never appeared at the request of any District Attorney, nor was he employed by any Board of County Commissioners, but was employed and paid by said coal companies, his said employment being made through the Hon. Jesse G. Northcutt, who has been, since the beginning of the strike, and is now, chief attorney for said coal companies, in their prosecution of all striking miners charged with crime.

That there are numbers of judges of the District Court in the State of Colorado who are not in any way prejudiced against or biased in favor of defendants, and who have never been employed by the coal companies in connection with their prosecutions against strikers, and before whom defendants can have a fair and impartial hearing and trial.

That said judge has not appeared in the District Court of Huerfano County, in which this case is pending, as judge at any time prior to the 14th of June, 1915, and this petition is filed at the earliest moment and immediately after the appearance of said judge in this court.

This application is not made for delay, but that justice may be done, and in order that there may be a fair and impartial hearing and trial of this cause.

There are atached hereto the affidavits of credible persons in support of this application, as required by the statute.

Defendants further respectfully state that it would, as they are advised, further be improper for the Honorable Granby Hillyer to preside in this cause because of the following additional matters and things, to-wit:

It is the intention of the defense in this cause to apply for a change of venue to some other county than Huerfano County, on account of the prejudice of the inhabitants of Huerfano County, and to object to the cause being transferred to the County of Prowers, on account of the inhabitants of said last-named county being so prejudiced against defendants that defendants could not secure a fair and impartial trial in said Prowers County. It will therefore become the duty of the judge who presides in this cause to pass upon the question of whether or not a change of venue shall be granted and, if so, to what county the case shall be transferred, and to pass upon the question as to whether or not Prowers County is a proper county in which the striking coal miners and their sympathizers, who are charged with crime shall be tried. On these questions the said Hon. Granby Hillyer was employed by the coal operators, hereinbefore mentioned, and he was their paid counsel and acted for them as their attorney, and representing them as their paid attorney he spent a great deal of time in securing affidavits in Prowers County to secure the transfer of striking miners' cases to said county, and he argued said questions in court in four cases in the District Court of Huerfano County on behalf of said coal operators, and in his argument insisted that Prowers County inhabitants were not prejudiced against the strikers or their sympathizers, and that fair trials could be obtained in said county, and he asked, as the representative of said coal operators, that said strike cases be transferred to Prowers County. It is respectfully submitted that it would be manifestly improper for the said Hon. Granby Hillyer to now sit in judgment in this case on a question as to which he was paid by the coal operators to represent them and to argue for them.

That on the hearing of the question in this court, in this cause, as to whether or not Prowers County is a proper county, these defendants will present to the court the identical affidavits now on file in this court in support of the application for change of venue in the causes in which the said Hillyer was employed as an attorney by the coal operators, and which affidavits were attacked by the said Hon. Granby Hillyer by counter affidavits, and which affidavits the said Hon. Granby Hillyer criticized in his argument in this court. In other words, if the Hon. Granby Hillyer should sit as judge in this cause he would have to weigh and pass upon affidavits which he has already, as counsel for the coal operators, attacked both by counter affidavits, and in his argument in this court.

That in some instances where the strikers' attorneys had secured affidavits from parties in Prowers County showing that the inhabitants of said county were prejudiced against the strikers, the said Hon Granby Hillyer secured affidavits thereafter from the same parties, and filed them in this court, in which affidavits said residents of Prowers County changed, or attempted to change, their former statements; and all these affidavits will of necessity have to be reviewed and passed upon by the judge who sits in this case.

That in said causes in which the said Hon. Granby Hillyer appeared as

attorney for the coal operators he personally drew a large number of affidavits, and in some of the affidavits drawn by the said Hon. Granby Hillyer he attacked the attorneys for the striking miners and charged them with having obtained by improper methods the affidavits which they obtained in Prowers County, and said attorneys filed rebuttal affidavits, justifying their conduct, and in turn attacking the affidavits drawn by the said Hon. Granby Hillyer.

That these matters were reviewed in argument by the respective counsel at the time the said Hon. Granby Hillyer appeared as attorney for the coal operators, and it would be unjust to the defendants in this cause to require them to submit their rights on said questions to a judge who was the paid attorney for the coal operators on the identical question to be passed upon now by the court.

That in the causes in which said Hon. Granby Hillyer appeared as aforesaid the applications for a change of venue were granted, and the court refused to send the causes to Prowers County.

JOHN BURKE,

CHARLES HAINES,

*Defendants.*

JOHN L. EAST, A. M. BELCHER, CHARLES T. MAHONEY, HORACE N. HAWKINS,
  *Attorneys for defendants.*

State of Colorado, County of Huerfano.—ss.

John Burke and Charles Haines, each duly sworn, upon oath says: That he is a defendant above named, has heard read the foregoing petition and knows the contents thereof. That the statements therein are true of his own knowledge except as to those therein alleged to be made upon information and belief, and as to those that he believes them to be true.

JOHN BURKE,

CHARLES HAINES,

Subscribed and sworn to before me this 14th day of June, 1915.

T. M. HUDSON,

*Clerk of the District Court.*

State of Colorado, County of Huerfano.—ss.

Horace N. Hawkins, first being duly sworn, upon oath deposes: That he is one of the attorneys for the defendants in the above styled cause, and that he has been a practicing attorney in the State of Colorado for more than twenty years. That he has read the foregoing petition and knows the contents thereof, and that each and every statement made therein is true, as affiant verily believes. That affiant is not in any way related to and not of kin to any defendant in the cause. That affiant has made a careful investigation as to whether defendant can have a fair and impartial hearing or trial before the judge mentioned in said petition, and as to whether or not said judge is or is not biased or prejudiced against defendants, and he states that the allegations in said petition are true. That affiant has no personal feeling of any kind in the matter, and only his sense of duty to

his clients, and his belief that they cannot have impartial hearings or trials before said judge, causes him to make this affidavit. That there are numbers of judges of the District Court who have no prejudice or bias before whom defendants can have impartial hearings and trials. That affiant was personally present and heard the said Hon. Granby Hillyer argue before the court in the four cases mentioned in the petition, and that prior to the said judge being appointed judge, he conversed upon several occasions with the said judge upon the subject of the strike, the strikers, and the industrial conflict mentioned in the petition, and knows that the statements made in the petition with reference to the employment of the said Hillyer and the services rendered by him are true. That the allegations made in the petition as to the existence of the strike, and the length of time-it existed, the parties to the controversy, the bitterness of the struggle, the armed conflicts that ensued, the accusations against the defendants, the extent of the feeling aroused, and the prejudice of the judge are allegations within the personal knowledge of affiant, and the statements contained in said allegations are true, of affiant's own knowledge, as are also the allegations as to the conduct of the coal companies in employing private counsel and detectives to prosecute defendants. Affiant further states upon his own knowledge that the application for change of judge is not made for delay, but because of the belief of the defendants' counsel that it is necessary to file such petition in order to secure a fair, impartial and unprejudiced judge.

HORACE N. HAWKINS,

Subscribed and sworn to before me this 14th day of June, 1915.

T. M. HUDSON,

*Clerk of the District Court.*

State of Colorado, County of Huerfano.—ss.

Charles T. Mahoney, first being duly sworn, upon oath deposes: That he is one of the attorneys for the defense in the above styled cause. That he is not related and not of kin to any defendant in the cause. That he is acquainted with the Hon. Granby Hillyer, judge of this court, mentioned in the petition, and that in his judgment said judge is biased and prejudiced against the defendants in this cause, and so biased and prejudiced that defendants cannot have a fair and impartial hearing or trial before said judge, and affiant states that a change of judge is necessary to secure a fair and impartial hearing and trial. That affiant is well acquainted in Huerfano County and in other counties in the southern part of the state, and knows the terrible and deep-seated feeling that has grown out of said struggle between capital and labor. That affiant has no personal feeling in the matter, and only joins in the application and makes this affidavit because he believes it to be necessary to secure to defendants fair and impartial hearings and trials. That the feeling has been so intense and so great that very great care will be required in connection with the trial of any case growing out of the strike, in order to give the defendants the fair trial which the law requires. Affiant has heard read the petition and the affidavits in support thereof, and knows the contents thereof, and affiant

states that the statements made in said petition are and each of them is true, and he knows that the petition is filed in this cause for a change of judge, not for delay, but only because after careful consideration it is deemed absolutely necessary to obtain a change of judge in order to secure for the defendants a fair and impartial hearing and trial.

CHARLES T. MAHONEY.

Subscribed and sworn to before me this 14th day of June, 1915.

T. M. HUDSON,
<em>Clerk of the District Court.</em>

State of Colorado, County of Huerfano.—ss.

JOHN L. EAST, being first duly sworn, upon oath deposes: That he is one of the attorneys for the defense in the above styled cause. That he is not of kin or related to any defendant in this cause. That affiant is a practicing attorney at Walsenburg, Colo. That affiant was present in court at Walsenburg at the time referred to in the foregoing petition when the honorable judge of this court appeared as attorney for the coal companies in the four strike cases referred to in the petition, and he heard said judge make an argument in said cause. That the said judge was a strong advocate for said coal companies, and was doing all he could to aid and help them in said criminal causes. That affiant has conversed with the said Hon. Granby Hillyer, and said conversations showed the said Hillyer to be biased and prejudiced, as stated in the petition, and that the statements made in said petition and in the affidavits in support thereof, all of which affiant has read, are true.

JOHN L. EAST.

Subscribed and sworn to before me this 14th day of June, 1915.

T. M. HUDSON,

(Seal)                                    <em>Clerk of the District Court.</em>

State of Colorado, County of Huerfano.—ss.

A. M. BELCHER, first being duly sworn, upon oath deposes: That he is one of the attorneys for the defense in the above-styled cause; that affiant has only recently come to the State of Colorado to appear in the cause and has not the knowledge concerning the matters mentioned in the petition which is possessed by other affiants who file affidavits in support of said petition. That affiant has made, however, a careful investigation during the past few weeks for the purpose of determining whether or not the said honorable judge of this court is biased and prejudiced against the defendants, and as to whether or not there can be a fair and impartial hearing and trial in the above-styled cause before said judge. That it is affiant's judgment, after having made said investigation that the said judge is so biased and prejudiced against the defense in the above-styled cause, and against said defendants, that it will be impossible for him to grant to defendants a fair and impartial hearing and trial. That affiant knows of his own knowledge that the petition for a change of judge is not filed for delay, but is filed only to secure a fair and impartial trial.

A. M. BELCHER.

Subscribed and sworn to before me this 14th day of June, 1915.

T. M. HUDSON,

(Seal)                                                                            *Clerk.*

State of Colorado, County of Huerfano.—ss.

J. M. McQUARRIE, first being duly sworn, upon oath deposes: That he is of the age of fifty-two years, resides in Las Animas County, and has resided in Colorado for a period of thirty-seven years, and in Las Animas County about twenty-seven years of said time. That he is well acquainted with the judge of this court, mentioned in the foregoing petition for a change of judge, and has known him for the past seven years. That during the continuance of the recent coal strike affiant had several conversations with said judge prior to the time said judge appeared as attorney at Walsenburg with Judge Northcutt on behalf of the coal companies. That the said judge in said conversations was outspoken and emphatic in condemning the striking miners, and was strongly opposed to them and approved of the actions in holding striking miners *incommunicado,* and in denying to them the writ of habeas corpus. That said judge was a strong partisan on the side of the coal companies in the recent conflict between capital and labor, mentioned in the petition, and was and is, in affiant's judgment, so deeply prejudiced that no member of the striking miners or their sympathizers can have a fair and impartial trial or hearing before him. That affiant is in no way related to or of kin to any striking miner or any defendant. Affiant does not mean to make any charge against the integrity of said judge, but only to state what he knows touching the prejudice of said judge.

J. M. McQUARRIE.

Subscribed and sworn to before me this 14th day of June, 1915.

T. M. HUDSON,

(Seal)                                                    *Clerk of the District Court.*