[No. 2842. Decided February 23, 1898.]

THE STATE OF WASHINGTON, *on the Relation of F. T. Barnard, Appellant,* v. BOARD OF EDUCATION OF CITY OF SEATTLE *et al., Respondents.*

PROHIBITION — DISQUALIFICATION OF SCHOOL DIRECTOR TO TRY OFFICER — POWER OF SUPREME COURT TO ISSUE SUPERSEDEAS — APPEAL — SUPERSEDEAS BOND.

On appeal from a judgment quashing an alternative writ of prohibition, a bond conditioned as a supersedeas does not operate as a suspension of the judgment.

The supreme court has jurisdiction to issue an order of supersedeas to preserve the *status quo* of parties pending the determination of an appeal on its merits, under art. 4, §4, of the constitution, giving the supreme court power to issue all writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction, when for want of such an order the appeal may be rendered of no avail to appellant, and the court's control of the appeal rendered ineffective.

Where a board of education is by law constituted a tribunal, from which there is no appeal, for the trial of its school officers,

a member of the board who has caused charges to be preferred against a school superintendent because of personal hostility toward him, and has announced a determination to vote against him, whatever the evidence, is disqualified to sit as a member of such tribunal during the trial of the superintendent and, if he attempts to participate as a member of the tribunal, may be restrained by the issuance of a writ of prohibition.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Reversed.

*Osborn, Steele & Aust,* and *Donworth & Howe,* for appellant.

*James F. McElroy,* and *John B. Hart,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—The appellant, F. J. Barnard, is superintendent of public schools of the city of Seattle. Charges were filed with the respondents, as the board of directors of said school district, charging the said Barnard with misfeasance and malfeasance in office, with conduct unbecoming a superintendent of schools, and with disobeying the rules of conduct established by the board of directors. Citation was issued to the appellant, citing him to appear before the board of directors to answer to the charges. The appellant objected to A. J. Wells, one of the board of directors, sitting as a member of the tribunal to hear and determine the charges, on the ground that said Wells was disqualified by reason of bias, prejudice and personal enmity towards the appellant. On the 17th day of December, 1897, on the application and affidavit of the appellant, Barnard, the superior court of King county, Wash., issued its writ of prohibition in the alternative to the respondents, staying proceedings until the further order of the court. On the return of said writ the superior court sustained a demurrer thereto quashing the writ, and entering judgment in favor of the defendants for their costs. The demurrer

was sustained upon the ground that no facts were stated sufficient to authorize the issuance of a writ. The appellant forthwith gave notice of appeal, and asked the court to fix the amount of the supersedeas bond. The court fixed the amount of the bond to operate as a supersedeas, but announced to the counsel for respondents in open court that the bond would operate only to stay execution for costs, because the judgment appealed from was not such a judgment as could be superseded. The appellant forthwith filed his bond on appeal in the amount fixed by the court, and conditioned as a supersedeas bond. The board of education, and Mr. Wells, sitting as a member thereof, proceeded with the hearing of the charges against the appellant. The appellant then applied to this court for an order of supersedeas, on which an alternative writ was granted, and the case is here now for final determination.

We are inclined to think that the bond upon appeal conditioned as supersedeas under our statutes did not operate to suspend and supersede the judgment quashing the alternative writ. But we think that this court, in the exercise of its discretion, by virtue of its inherent powers as an appellate tribunal, can issue an order of supersedeas to preserve the status quo of the parties, pending the determination of the appeal upon its merits. Section 4 of article 4 of the constitution of Washington, after reciting the original jurisdiction of the supreme court, says further:

"The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

It is conceded that an appeal lies from the judgment of the court in quashing the writ, and, under the provision just read, for the purpose of making that appeal effective, and to insure the complete exercise of this court over that appeal, it becomes necessary and proper to supersede the

judgment, otherwise the right to appeal which the statute has given would be of no avail to the appellant, for if the board of directors in the meantime were to proceed to remove him, when the case finally reached this court on appeal it would have to be dismissed for want of merit, because the trial on merit would already have terminated. *People v. Commissioners of Excise,* 61 How. Pr. 514. We think this is exactly the kind of a case which is contemplated by the constitution, and that the only way that this court could maintain the complete exercise of its appellate jurisdiction would be by issuing the writ prayed for. There would be no meaning to the provision of the constitution, and no necessity for it, if it could only be held to apply to cases where supersedeas was provided for by the law. In *Home Fire Ins. Co. v. Dutcher,* 48 Neb. 755 (67 N. W. 766), it was held that in cases where the statute makes no provision for a supersedeas, as a matter of right, the court may, in its discretion, allow a supersedeas upon conditions which it may affix for the protection of the parties, and that it is within the power of the court, in its discretion, after obtaining jurisdiction of a case by appeal, to allow a supersedeas in cases not provided for by statute, and upon terms which the court may prescribe. To the same effect is *City of Janesville v. Janesville Water Co.,* 89 Wis. 159 ( 61 N. W. 770). In that case the court said:

" Within the limitation that the appeal is taken and prosecuted in good faith, and that the party asking it gives the reasonable security required for that purpose, a stay of proceedings during the pendency of an appeal is quite of course, and really a matter of right, without which an appeal allowed by law would often prove fruitless, and the appellate jurisdiction of the court be found inadequate to the ends of justice and the proper protection of the rights of parties during the pendency of the appeal."

In *Hill v. Finnigan,* 54 Cal. 493, the court said:

" We have no doubt but this court has an inherent power to secure to the appellant the fruits of a successful appeal, if it can be done without depriving the respondent of a substantial right."

And the qualification mentioned by the court in that case is not in point here, for there is nothing to prevent the board proceeding with the trial of the cause without the concurrence of the member objected to. In *Levy v. Goldberg*, 40 Wis. 308, it was held that the power of the court to stay proceedings in any matter appealed to it did not altogether depend upon statutory enactment, but was inherent in the court. The same announcement was made in *Northwestern Mut. Life Ins. Co. v. Park Hotel Co.*, 37 Wis. 125.

The substance of the affidavit for the writ is to the effect that A. J. Wells was a personal enemy of the relator, that he was a prime mover in having the charges preferred and prosecuted, that he was biased and prejudiced against relator, that he had no personal knowledge of any of the facts alleged in the charges, that he had publicly announced his intention to vote to find relator guilty, and that he proposed to vote to remove him from his office no matter what the evidence might be, and that his mind was made up and his determination fixed.

The case of *Fawcett v. Superior Court*, 15 Wash. 342 (46 Pac. 389, 55 Am. St. Rep. 894), is relied upon by the respondent to maintain his contention that the board of education cannot be restrained from proceeding. That was a quo warranto proceeding to try the right to an office. The judgment of ouster had been pronounced against Fawcett, and it was held by this court that the judgment was self-executing, and that without the aid of process or further action of the court it accomplished the object sought to be attained, so that there was nothing upon which the bond

could operate except for costs. But that is altogether different from the case at bar. It was the object of the appellant in this case to prevent himself from being placed in the position in which Fawcett was placed by the judgment of ouster. Were he to stand by, and allow the board to proceed and remove him from his office, then he would be as helpless as Fawcett was in the case cited; but it is for the very purpose of maintaining his rights and preventing his being overtaken by that condition that this stay is sought.

It is stoutly contended by the respondents that this case does not fall under any of the disqualifications of the judge provided in subd. 4 of § 163 of the Code of Procedure (Bal. Code, § 4857), and that, outside of the provisions of the code, a judge is only disqualified by having a financial interest in the result of the suit. We have examined with care all the authorities cited by the respondents to sustain this contention, but are of the opinion that they fail to do so. Most of the cases either fall within the doctrine of necessity, which is announced by some of the courts, where to challenge the judge successfully would prevent the hearing of the cause, as in cases where there was no other tribunal to try the case, or where the judge was sitting merely to declare the law and the case was tried by jury, and in all the cases we think an appeal would lie. It may be said here that no appeal lies from the decision of the board of directors, and the judges act in the capacity of jurors; and, while some courts have decided that the tests of the respective qualifications of judges and jurors are not the same, yet in a case of this kind, where the judges pass upon the facts, and it is a pure question of fact which is presented for their consideration and for their determination, we see no good reason why the test of qualification should be different; for the judge in this case is in reality a juror passing upon ques-

tions of fact. It is true that on page 52 of 12 Am. & Eng. Enc. Law, the proposition is announced that, "in the absence of statutory provisions, prejudice not based on property interest in the judge is not assignable as a legal cause of disqualification." But this broad assertion of the text is not borne out by the cases cited to sustain it, many of which are cited by the respondents in this case. For instance, in *McCauley v. Weller*, 12 Cal. 500, it was held by the supreme court of California, through TERRY, C. J., that

"the exhibition by a judge of partisan feeling, or the unnecessary expression of an opinion upon the justice or merits of a controversy, though exceedingly indecorous, improper and reprehensible, as calculated to throw suspicion upon the judgments of the court, and bring the administration of justice into contempt, are not, under our statute, sufficient to authorize a change of venue on the ground that the judge is disqualified from sitting."

But even admitting the correctness of that decision— which we are not inclined to do—the court evidently would have come to a different decision in a case of this kind, for they based the decision on the ground that the province of the judge was to decide questions of law alone, and that his decisions upon these points were not final, but, if erroneous, the party had his remedy by appeal. *People v. Mahoney*, 18 Cal. 181, is substantially the same holding, the argument being that, if the judge acted illegally on the trial, or denied the prisoner his legal rights, it could be remedied on appeal. In *People v. Williams*, 24 Cal. 31, the court quotes approvingly § 2945 of Wharton's Criminal Law, where that author says:

" The practice among the civilians extends the right of challenges for cause to the judges as well as the jurors; and the great inclination of authority is that the same causes which disqualify one disqualify the other. Where

the judge, like a chancellor, sits to try both facts and law, as in the case with the civilians, there is peculiar reason for the application to him of a jealous test."

But in this case the judges were simply sitting as judges to pass upon questions of law, and the court discriminated that case from such a case as the one in hand.

*Chapman v. Stoneman,* 63 Cal. 490, does not seem to us to be in point. It was simply held in that case that the governor had authority and jurisdiction to investigate questions of misconduct on the part of the state board of prison directors. There is no intimation in the case anywhere of any charge of bias or prejudice on the part of the governor. *Allen v. Reilly,* 5 Nev. 452, cited on page 8 of respondents' brief, is evidently a miscitation, as the case is not to be found in that volume. It was probably taken from the citations given by 12 Am. & Eng. Enc. Law to sustain the text announced by that court, which we commented on above; but the author was mistaken in the citation. *Pearson v. Hopkins,* 2 N. J. Law, 181, was a challenge to a judge who had acted in the circuit court, and had overruled a motion of the defendant for a nonsuit, and it was held that this did not disqualify him from sitting in the case on appeal, the court rightfully taking the view that, if the expression of an opinion by a judge on the law disqualified him, he would be disqualified from trying a case upon the granting of a motion for a new trial. The same was substantially the holding in *Pierce v. Delamater,* 1 N. Y. 17, and the same, in substance, was decided in *Waters-Pierce Oil Co. v. Cook,* 6 'Lex. Civ. App. 573 (26 S. W. 96). We do not think the other cases cited in respondent's brief, and commented on therein, are in point. We will, however, especially notice the two which are nearest in point. In *People v. Board of Police Com'rs,* 32 N. Y. Supp. 18, it was held that it was not error for a commission-

er to sit on the trial of charges against a policeman after he had been challenged on the ground that he had prejudged the case, and did not intend to give the policeman a fair trial, it not being claimed that the commissioner had any interest in the matter, or was disqualified by any statute. This case was based on the doctrine of necessity, and it was asserted by the court that, if the judges who were challenged were thereby rendered disqualified to try the case, the relator could secure himself in office, because it would leave the board without a majority of its members to render a judgment or make a determination.  And in *People v. Common Council of City of Auburn*, 33 N. Y. Supp. 165, the decision is substantially the same as the one noticed above, where the court quoted approvingly the announcement by the court in *In re Ryers*, 72 N. Y. 1 (28 Am. Rep. 88),

" that it must be the law from these cases that, where the judicial power has been confided to one judge, and, if he should fail to act, there would be no means of proceeding in the matter, though interested, he may take such cognizance of the case as is absolutely necessary, so far that the party shall not be without remedy."

But the two last cases, as far as they did go on the subject—and they may be conceded to come nearer sustaining respondents' contention than any other cases cited— were overruled in *People v. Board of Trustees of Village of Saratoga Springs*, 39 N. Y. Supp. 607, where it was held that a village trustee who prefers charges against a village officer is disqualified to sit as a member of the board of trustees on hearing of the charges, as otherwise he would act as both accuser and judge;  especially disapproving *People v. Common Council of City of Auburn*, *supra*, and further holding that the removal of a village officer by the board of trustees is illegal where the charges were preferred by one of the trustees who sat on the hear-

ing, and without whom a quorum of the board would not have been present. And noticing the doctrine of necessity above spoken of, it was held that the exception to the rule that judicial officers shall not act in a matter in which they are interested, in order to prevent a failure of justice, does not apply so as to permit a disqualified member of a board, the powers of which may be exercised by a majority of its members, to take part in a judicial proceeding by the board. This case seems to us to be a parallel case with the one at bar, so far as this question is concerned. The court makes the announcement that one of the rights secured to an accused person by the law of the land is that his accuser shall not be at the same time his judge.

"Cases are to be found," say the court in this case, "where judicial officers, or officials acting in a judicial capacity, have been permitted to act, notwithstanding the disqualification of interest; but I think, without exception, they have all been cases where, unless such officer was permitted to act, there would have been a failure of justice, for the reason that there was no other person who could act. They have been confined to cases where the judicial tribunal or body to act consisted of but a single person, and there was no other tribunal or officer before whom the proceedings could be taken, and the officer was permitted to act from necessity."

It is conceded by the counsel for the respondents that this case overrules the former cases reported in the New York Supplement, but they insist that the reasoning of the former cases is better, and that the decisions are more in consonance with the adjudicated cases. But we cannot agree with them on this proposition. The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through

2—19 WASH.

and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals. Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be as shocking to our private sense of justice as they would be injurious to the public interest. The learned and observant Lord Bacon well said that the virtue of a judge is seen in making inequality equal, that he may plant his judgment as upon even ground. Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, in whose keeping are placed not only the financial interests, but the honor, the liberty and the lives of its citizens, and it should see to it that the scales in which the rights of the citizen are weighed should be nicely balanced, for, as was well said by Judge BRONSON in *People v. Suffolk Common Pleas*, 18 Wend. 550:

" Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge."

The reason that financial interest or near relationship to a litigant is held to be sufficient to recuse a judge is that it is to be presumed that self-interest or natural affection will unconsciously prejudice a judge, and deprive the litigant of a fair trial. This presumption in certain cases may or may not be justified by the truth, but so solicitous is the law to maintain inviolate the principle that every litigant shall be secure in his right to a fair trial that he is accorded the benefit of the presumption. But what does a presumption amount to compared with the admitted fact that the judge will not accord the litigant a fair trial; that he will vote to remove him from his office, no matter what the

evidence may be? And this, so far as this case is concerned, the demurrer to the affidavit having been sustained, must be considered the fact. To compel a litigant to submit to a judge who has already confessedly prejudged him, and who is candid enough to announce his decision in advance, and insist that he will adhere to it, no matter what the evidence may be, would be so farcical and manifestly wrong that it seems to us that the idea must necessarily be excluded by the very expression "administration of justice." As sustaining this view, the following cases, cited by appellant, are found to be in point: *Barnett v. Ashmore*, 5 Wash. 163 (31 Pac. 466); *Moses v. Julian*, 84 Am. Dec. 114; *Stockwell v. Township Board*, 22 Mich. 341; *Oakley v. Aspinwall*, 3 N. Y. 547; *Williams v. Robinson*, 6 Cush. 334. A review of the cases cited by appellant is made by the respondents for the purpose of showing that the facts decided in them are not similar to the facts in the case at bar, and, while it is true that in some of the cases financial interest was claimed, yet, as a rule, the decisions are not based upon that ground, but upon the broad ground that the citizen is entitled to a judge who is absolutely impartial. The merits of the case are not now before us. The permanent writ will issue.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.