ROBERTO H. TODD, Petitioner and Appellant, *v.* MUNICIPAL ASSEMBLY OF SAN JUAN, Respondent and Appellee.

No. 4739. Argued November 14, 1929.—Decided April 23, 1930.

*Feliú & La Costa,* for appellant. *R. Martínez Nadal* and *Cayetano Coll y Cuchí,* for appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

At a special session held on August 15, 1928, the Municipal Assembly of San Juan constituted itself as a court of impeachment and, so sitting, it decided to institute impeachment proceedings against the mayor of the city in pursuance of a complaint filed against him by a citizen. It also decided to suspend the mayor from his office and salary pending the determination of the charges filed. Thereupon the mayor petitioned the District Court of San Juan for a writ of certiorari seeking to annul the impeachment proceedings so instituted and also his suspension from office and salary. The district court issued the writ, and at the same time ordered a suspension of the action taken by the assembly pending final decision in the certiorari proceedings. After the necessary documents had been sent up and the parties had been heard, that court filed an opinion to the effect that the municipal assembly had power to impeach the mayor notwithstanding the fact that the session held by the assembly was a special one and the matter in question was not included in the call for such session; but it held that during the impeachment proceedings the mayor could not be suspended from office. For the reasons stated in that opinion, the district court rendered judgment granting the certiorari petition in so far as the suspension of the mayor from office pending a determination of the charges against him was concerned and, consequently, it set aside the said suspension and ordered that the documents sent up be returned for further proceedings not inconsistent with the opinion. In the judgment, the stay ordered when the writ was originally issued was not vacated.

The mayor appealed from that judgment and, after filing the record of the appeal in this court, he obtained, upon the furnishing of a bond, from Justice Texidor, who was then acting judge in charge of this court during its period of vacation, an order of supersedeas directing the members of the municipal assembly to suspend further proceedings in

the impeachment against the mayor pending a determination of the appeal. Notwithstanding the above order, the municipal assembly continued the impeachment proceedings and finally decreed the removal of the mayor. Thereupon, on motion of the appellant mayor, the said acting judge in vacation issued a rule against the members of the municipal assembly who had continued the impeachment proceedings—which rule was made returnable to the full court—to show cause why they should not be punished for contempt for failure to comply with the order of stay of the said proceedings.

The foregoing facts appear from the contempt proceedings and from the record of the appeal taken by the mayor to review the judgment rendered in the certiorari proceedings.

At the hearing of the contempt proceedings the cited assemblymen appeared and alleged that they had not committed any contempt, either of the court or of the acting judge in vacation, because the justice who made the order of supersedeas had no power to suspend the execution of the judgment of the district court; because, even if the order is held to be valid, its only effect was to suspend the execution of the judgment rendered by the district court, which in this case confined itself to annulling the suspension of the employment and salary of the mayor; because the judgment of the district court is not of such a character as to permit its execution to be stayed by an order of supersedeas; because that judgment was only executory as to the suspension of the employment and salary of the mayor; because in prosecuting the impeachment proceedings against the mayor the municipal assembly did not deprive him of any vested rights, since any judgment rendered therein was not executory until after an affirmance thereof on appeal; and because the members of the assembly acted in good faith and on the advice of counsel.

In view of these contentions, this court confined itself to hearing the argument on the preliminary question of jurisdiction raised, reserving to the contemners an opportunity to

present their argument on other aspects of the case if our determination of such question should be adverse to them.

It will be noted from the foregoing, that in the certiorari proceedings instituted by the mayor in the District Court of San Juan contentions were advanced by him: First, that the action of the municipal assembly in instituting the impeachment proceedings was null and void because, as a special session was involved, the assembly could not consider other matters than those included in the call, and the matter of the impeachment was not so included; and, second, that the suspension of his employment and salary, pending the impeachment proceedings, was unlawful. The district court held that the mayor was right on the second question but not on the first and, therefore, in its judgment it quashed the proceedings under review only in so far as the said second question was concerned. Consequently, the appeal of the mayor from that judgment could but refer to that part thereof which was prejudicial to him, that is, in so far as the judgment failed to quash the resolution which provided for the prosecution of the impeachment.

According to section 295 of the Code of Civil Procedure an appeal may be taken from a final judgment in an action or special proceedings; and as certiorari is in the nature of a special proceeding, an appeal may be taken from a final judgment rendered therein. *American R. R. Co.* v. *Municipal Court,* 16 P.R.R. 227. Although this proposition is not disputed in the present case, it is well to mention it here, because it serves as a basis for the consideration of another question.

Section 297 of the same code provides that whenever an appeal is perfected it stays all further proceedings in the court below upon the judgment or order appealed from or upon the matters embraced therein, although the court below may proceed upon any other matter embraced in the action and not affected by the order appealed from. On the other hand, section 298, after referring to the above rule, pre-

scribes three exceptions thereto, none of which includes an appeal from a judgment in certiorari proceedings.

In accordance, then, with the above legal precepts the appeal in this case stayed *ex proprio vigore* the execution of the judgment appealed from (*Pescay et al.* v. *Texidor, Judge, et al.*, 26 P.R.R. 155), and, therefore, as the validity of the resolution of the municipal assembly to impeach the mayor had been challenged and as the district court had issued the writ of certiorari and had ordered a stay of the said resolution, the appeal from the judgment, which failed to set aside that resolution, had the effect of preserving the *status quo* created by the issuance of the writ of certiorari. Consequently, until the appeal was determined the resolution in question could not be carried out, as the appeal brought before us for decision the question of whether or not the said resolution was void and, pending such determination, the mayor was not subject to any further action taken by the assembly in the impeachment proceedings.

The foregoing having been established, let us now turn to the question of whether the Supreme Court or a member thereof in vacation had the power to make in the case at bar, after the appeal had been perfected, an order directing the municipal assembly to suspend the impeachment proceedings pending a determination of such appeal.

There is no doubt that once an appeal has been perfected, jurisdiction of the cause is transferred from the district court to the Supreme Court (3 C. J. p. 1252, par. 1366). Therefore, from the moment the present appeal was perfected the district court lost its jurisdiction of the case, which thenceforth was submitted to the jurisdiction of this court for the purposes of the appeal.

There is no statutory law specifically providing that the Supreme Court is empowered to issue writs of supersedeas to stay the execution of a judgment appealed from. But this is not strange, since section 297, *supra,* prescribes that an appeal stays all further proceedings in the court below and,

therefore, it was not necessary that the statute provided that the Supreme Court could order a stay of such a judgment. But should it happen, as in the present case, that owing to the failure of the judgment below to declare void a certain decision or resolution challenged by certiorari, and notwithstanding the appeal, it were sought to enforce the judgment of the lower court, the Supreme Court has the inherent power to enforce its appellate jurisdiction and to stay by a proper order the execution of the judgment appealed from, in accordance with section 36 of the Code of Civil Procedure, which provides that when jurisdiction is, by said code or by another statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of the proceedings be not specially pointed out by that code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the code. Therefore, as not only the spirit of the said code but its express provisions as well are to the effect that an appealed judgment is not executory until the appeal is decided, there is no doubt that this court is empowered by said section 36 to issue orders to make its appellate jurisdiction effective and prevent the execution of the judgment. In *Farmers' State Bank of Riverton* v. *Hann,* (Wyo.) 213 Pac. 361, it was said (to quote from the syllabus): "One of the inherent powers of the Supreme Court is that it may grant supersedeas or an order staying execution, or the enforcement of a judgment appealed from on proper terms and conditions after it has acquired appellate jurisdiction over the particular case, if that be found necessary to make effective the complete exercise of its jurisdiction." In *Wood* v. *Board of Fire Com'rs of City of Los Angeles,* 195 Pac. 739, it was declared: "The District Court of Appeal in the exercise of its appellate jurisdiction possesses the inherent power to stay proceedings on the judgment appealed from, although no statutory provision is made for such stay." To the same effect are the cases of

*Luckenbach* v. *Laer et al.,* 204 Pac. 591, 188 Cal. 175; *Union Sawmill Co.* v. *Felsenthal Land, etc.,* 84 Ark. 494, 106 S. W. 676; and *American Strawboard Co.* v. *Indianapolis Water Co.,* 81 Fed. 423, 26 C.C.A. 470 (aff. dism. 84 Fed. 1014 mem., 28 C.C.A. 678). In *Axtmayer* v. *Korber, per curiam* decision of January 31, 1927, this court stayed the execution of the judgment appealed from, applying sections 36 and 297 of the Code of Civil Procedure.

It having been shown that this court has the power to grant supersedeas or an order staying the execution of a judgment appealed from, pending a determination of the appeal, let us see now whether such an order may be issued by one of the members of the court during its vacation period to prevent an existing status created by law from being circumvented or defeated.

In one of the cases cited by the assemblymen, that of *In re Talbot,* 58 Ind. A. 426, 108 N. E. 241, 243–244, dealing with certain powers inherent in the courts, it was said:

"It will be observed that the power exercised by the judge in vacation, or by the separate judges of a court made up of several members, is a power incident to the court as a court, and not an original power or authority given to a member of the court to be exercised independent of the other members of such court independent of the court made up of all of its members. The exercise of such a power by the individual member in such a case is an exercise of the power of the court, and such individual member acts in such matter as and for the court, and can exercise such power only as the court itself has in the premises or might exercise. It is in a sense an emergency power given to the individual member of the court to be exercised for the court in aid of its jurisdiction or in the furtherance of the business pending before it, where for some reason the court as a court cannot act."

Since 1902—two years before the Code of Civil Procedure was promulgated—there has been in force in this Island a law enacted in that year (Revised Statutes, p. 240), which, as amended by Act No. 4 of March 10, 1914 (Session Laws, p. 135), provides that the Supreme Court shall hold five terms

in each year, the fourth term to begin the first Monday in July and to continue for four weeks, and the fifth to begin on the first Monday in November. So that there is a period of three months during which this court holds no sessions, this constituting its vacation period. The said law of 1902 also provides that one of the justices of the Supreme Court shall always remain at the capital when the court is not in session. Nothing further is said in that law. But as the courts are bound to construe statutes so as to give them effect, wherever possible, since it is not to be assumed that laws are ordained without any purpose, we must consider the above cited law with reference to the purposes for which it was enacted. As courts are established to administer justice, and since according to the said act of 1902 there are intervals of several days or weeks between some of the terms and a period of about three months between the fourth and fifth term, during which intervals or period this court can not hold sessions, it seems obvious to us that if the law provides that one of the justices of this court must remain in the capital (that is, San Juan, which is the seat of the court) when the court is not in session, such compulsory stay in this city must have some judicial purpose, as otherwise it would be an aimless provision without any practical value. Therefore we are of the opinion that the aim of such provision is to avoid the complete paralization of the functions of this court, and to enable the designated justice to act for the court in matters which do not require the action of the full court to determine controversies between the parties litigant, such as the making of orders on motions for extensions of time and the like, as has been the practice of this court for the last twenty-six years; also the issuance of orders for the enforce-ment of the statutory law and the appellate jurisdiction of this court, by adopting all necessary measures, according to the circumstances of each individual case, for the protection of the right of every appellant to have the execution of the judgment appealed from stayed until his appeal has been

decided. That is why we think that once the acting judge of this court was properly informed that, notwithstanding the statutory provisions staying the execution of judgments or orders appealed from, the appellee herein was seeking to execute the judgment in so far as it failed to annul one of the resolutions challenged by certiorari, the said judge was empowered to issue the order of supersedeas. If the acting judge had no such power during the periods when this court is not sitting, then the rights of appellants might be defeated, either through a sale of the property in litigation, as was attempted in the *Axtmayer* case, or through the prosecution of the impeachment proceedings and removal from office of the appellant, as in the case herein, before a proper determination of the appeal. In the case of *Ex parte Pearl Roller Mill Co.* (Ala.) 45 So. 423, there was filed a petition for mandamus to compel the setting aside of an order overruling a motion to quash a writ of supersedeas, on the ground, among others, that the writ was issued by the judge in vacation of the circuit court, and when denying the writ of mandamus the Supreme Court of Alabama declared that the judges of the circuit court may issue the writ of supersedeas in vacation, returnable to the court in term time. In 3 Corpus Juris, p. 1288, it is stated that the power to grant a supersedeas or stay also exists in the appellant court, or in a judge or justice thereof, provided the jurisdiction of the appellate court over the appeal or writ of error has attached, and subject to statutory restrictions (which do not exist in this jurisdiction); and in a footnote (No. 49) numerous decisions of the Supreme Court of the United States and of other courts are cited in support of the statements in the text.

In *State of Washington, ex rel. Barnard* v. *Board of Education*, 19 Wash. 8, 52 Pac. 317, 40 L.R.A. 317, 67 Am. St. Rep. 706, a writ of certiorari was issued and thereafter, in sustaining a demurrer to the application, the writ was quashed, and on appeal from that decision the Supreme Court of Washington held that by virtue of its inherent power as an ap-

pellate tribunal it was authorized to issue an order of supersedeas to preserve the *status quo* of the parties to the appeal, pending a determination thereof upon its merits. That doctrine was cited in the subsequent cases of *State, ex rel. Bringgold* v. *Burns*, 21 Wash. 227, and in *State, ex rel. Gawley* v. *Bremerton*, 32 Wash. 508, although in the latter cases and for certain reasons the writ of supersedeas was not issued.

In *Waterman* v. *Raymond*, 5 Wis. 185, cited in 67 Am. St. Rep. 717, it was held that a justice of the Supreme Court of Wisconsin has the power, in vacation, to make a provisional order for the stay of proceedings in the court below, to enable a party to make or renew, if need be, a similar motion in term time.

In *People* v. *De Jesús, per curiam* decision of February 11, 1927, this court affirmed an order of supersedeas issued by one of its justices in vacation. The certiorari case of *Benítez et al.* v. *District Court of Humacao*, 36 P.R.R. 408, aptly shows that the intention of the Legislature was that the acting judge of this court in vacation should act for the court in certain cases. There, after a judgment by default was entered and a writ of execution was issued by the district court, a petition for certiorari was filed in this court seeking to vacate the judgment. The writ of certiorari could only be issued by the court, which was then in vacation; but one of its justices ordered, upon a bond, the stay of the execution of the judgment challenged. That stay was not opposed by the aggrieved party and, a writ of certiorari having been issued thereafter by the court in term time, the writ of execution under review was eventually annulled. If the acting judge in vacation had not been empowered to order a stay in that case, we wonder how many litigations and how much injury would have resulted from his inability to act. The decision of this court, in the appeal taken by the mayor from the resolution of the Municipal Assembly to institute impeachment proceedings (*Todd* v. *Municipal Assembly*, 39 P.R.R. 130), whereby the said resolution was set aside, not only demon-

strates the justice of the order whereby the execution of the resolution was stayed but also how logical it is for this court, as well as for the acting judge in vacation, to have power to issue a writ of supersedeas pending the determination of an appeal.

The contention of the assemblymen that neither this court nor any of its justices has the power to restrain the municipal assembly from instituting impeachment proceedings against the mayor in accordance with section 29 of the Municipal Law of 1928 is not well founded, since the order of supersedeas in the case at bar does not declare that the municipal assembly lacks such power, but confines itself to staying the proceedings pending a determination on appeal of the question whether a municipal assembly may, at a special session, exercise that power notwithstanding it involves a matter not included in the call.

For the reasons stated, the contention that this court or an acting judge thereof in vacation has no jurisdiction to issue an order of supersedeas must be rejected.

The conclusions thus reached by us would justify a continuation of the contempt proceedings. But in view of the fact that the determination of the questions raised has been long delayed, due to their intrinsic importance and to the great number of cases pending before us, we will in the present case accept the statements of the contemners that they did not mean to disobey the order of this court, made by one of its justices, and that they acted on the advice of counsel; and we will dismiss the case.

MR. JUSTICE WOLF, dissenting.

Roberto H. Todd, mayor of San Juan, was the petitioner in a certiorari suit before the District Court of San Juan and he was partially successful, and failed in part. The object of the writ was to annul impeachment proceedings of the Municipal Assembly of San Juan. He duly appealed to this court, but at the time of the appeal the court was in vacation. To suspend further proceedings by the municipal assembly

pending the appeal, an application was made to Mr. Justice Texidor of this court to restrain the municipal assembly from proceeding further in the impeachment case initiated by the said assembly. The order so solicited was granted by Mr. Justice Texidor on the 25th of September, 1928. On the 9th of October Mr. Justice Texidor issued a rule to show cause why the municipal assembly, or rather its constituent members, should not be punished for contempt, inasmuch as they had gone on with the impeachment case. The rule was made returnable to the full court and was heard by us on November 14, 1928. The difficulties between the mayor and the municipal assembly gave rise to several proceedings in the court and all of them have been decided save this one.

There can be no doubt that by appealing from the order of Judge Texidor dated September 28, 1928, the respondents to the rule did not vary their legal situation. In my opinion there is no possible appeal to the full court from the action of an individual judge of this court unless given by statute. No statute gives such an appeal in a case like the present one.

Nor can any doubt exist that, by reason of the appeal by Mayor Todd, this court acquired jurisdiction of the certiorari proceeding. It would necessarily follow that if an appeal from an order in certiorari suspends proceedings in a court below, then the mere appeal was operative to suspend the action of the court if the said court had taken any action capable of being suspended. It is well to say immediately that in the instant case the court below in its final judgment refused to order or did not order the municipal assembly to desist from trying the impeachment proceeding.

The respondents say that the order of the District Court of San Juan was to annul the action of the municipal assembly in so far as the said assembly attempted to suspend the employment and salary of the mayor, but that the said order contained no other pronouncement limiting or restricting the rights of anyone. The decision did order the return to the assembly of the documents certified up to the court.

What these documents were the record before us does not disclose.

Now it is readily conceivable, under the classical certiorari, when a district court annuls a writ of certiorari originally granted by it against a municipal court and the petitioner appeals, that the appeal would suspend the return of the record to the municipal court, assuming, as would generally be the case, that the said record had been certified up to the district court. The total effect would be that the municipal court could not go on with the case.

It was not the classical certiorari that was presented to the district court. As we have pointed out in various decisions, this is a special remedy to annul ordinances or actions of municipal assemblies, under section 65 of the Municipal Act (Session Laws 1924, p. 106). It reads as follows:

"That on motion of the aggrieved party the district courts shall have jurisdiction—

"(a) To annul or review by writ of *certiorari* any legislative or administrative act of the municipal assembly, mayor or other municipal officer, which infringes the constitutional right of the complainant or which is contrary to the Organic Act or the laws of Porto Rico;

"(b) To stay by injunction the execution of any ordinance, act, resolution or order which infringes rights guaranteed by the Constitution or Insular laws;

"(c) To compel by writ of mandamus a compliance with ministerial duties by municipal officials;

"(d) To grant, through ordinary action compensation for damages to parties injured by acts or omissions of municipal officials through malice or inexcusable negligence or ignorance.

"In the first two cases the aggrieved party may only bring his suit within the term of thirty days from and after the date on which the executive or administrative action shall have been performed or the ordinance, action, resolution or order published or comunicated to the complainant."

What is certified up to the district court on the issuance of such a writ? One hardly knows, and the record does not disclose it in this case. We do not even know whether, when

a writ of certiorari is so issued, the issuance of it suspends *pendente lite* without more the effect of the legislative or administrative act sought to be annulled.

Let us suppose in any place, at any time, one desires to attack any legislative act as unconstitutional or inoperative. The most appropriated writ or action is taken, but is it conceivable that the action of an individual citizen can, in testing an act, suspend a law of the Legislature? The analogy holds *mutatis mutandi* for the acts of a municipal assembly. The operation of the act of a municipal assembly is not annulled or suspended by the mere issuance of a writ of certiorari. The act still has the force of law. The annulment or suspension must come from the court itself, independently of the issuance of the certiorari, perhaps by injunction or what not.

In the instant case the District Court of San Juan refused to annul the proceeding of the municipal assembly in so far as it began a proceeding to impeach Mayor Todd. *A fortiori* so far as the record discloses, nothing was suspended that had not been suspended before. The case is similar to a preliminary injunction granted and subsequently dissolved. The appeal does not keep alive the said preliminary injunction, unless by statute or special order of the court. 3 C. J. 1405. If it were otherwise, courts would be more loath than ever to issue a preliminary injunction.

The effect of the appeal in this case was not to suspend the action of the municipal assembly in the impeachment case. The appeal did not preserve the *status quo* because nothing, so far as the record discloses, was suspended in the court below.

This court was without power to order a suspension of the impeachment proceeding pending the appeal unless the said proceeding had been suspended before, and I maintain that it had not.

It would follow necessarily that the acting judge of this court could not do what the court itself could not do.

Assuming, however, that this court had such a power, there is nothing in the law that authorized a single judge to act for the court. The extensions of time granted by the acting judge bear no analogy. Even in term time the Chief Justice, without consultation by long practice acquiesced in by the court acts alone. In vacation the acting judge is acting Chief Justice. The provision of law requiring one of the justices to remain in San Juan may be to have an acting Chief Justice or to provide for such writs like habeas corpus or matters issued by an individual judge returnable to the court. The actions of trial judges in vacation bear no analogy. I find nothing in the law that authorizes an individual judge of this court to act for it and suspend proceedings not otherwise duly suspended.

If, as counsel for Mayor Todd contend, the appeal suspended the action of the municipal assembly, then there was no necessity for a further order of supersedeas.

The order in this case is for failing to obey the supersedeas of Judge Texidor and not, in terms at least, for failing to suspend, due to the appeal.

The rule to show cause should be discharged.