[Civ. No. 7275. Second Appellate District, Division Two.—July 25, 1930.]

JOHN A. EVANS et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Meserve, Mumper, Hughes & Robertson for Petitioners.

John Beardsley for Respondents.

GATES, J., *pro tem.*—This is an original application for a writ of prohibition to be directed to the Superior Court of Los Angeles County and the Honorable Clair S. Tappaan, judge thereof, commanding and directing the court and the judge mentioned to desist and refrain from hearing and trying twelve different cases now pending and awaiting trial in the Superior Court. The importance of the matter in respect to the questions of law and practice which it involves will require a somewhat detailed statement of facts out of which it arises.

It appears that at various times during the month of January, 1928, twelve actions were commenced in the Superior Court of Los Angeles County by twelve individual plaintiffs against these petitioners and others as defendants, in which actions damages were demanded in the sum of $260,000; that thereafter another action, one in rescission, was commenced by one Walz, as plaintiff, and petitioners herein were named defendants. Thereafter petitioners, as defendants in the thirteen actions, filed demurrers which

were overruled and they thereupon answered. The thirteen actions are now pending in the respondent court and are set for trial before the respondent judge above mentioned. On or about January 13, 1928, Stewart McLeod commenced an action in the Superior Court in the aforesaid county against these petitioners as defendants. The case was, on April 10, 1929, called for trial. The trial of the cause lasted forty-three court days and was concluded June 21, 1929, and was thereafter taken under submission on July 15, 1929. The judge later announced from the bench his decision in the case in favor of the plaintiff McLeod and against the defendants. We will advert later to a portion of this decision. The record herein clearly shows that the cases were never consolidated for trial. All of the actions were set down on the master calendar of the court for trial on April 9, 1929, and thereafter on that day they were all transferred to department 5, presided over by Judge Tappaan. The case of *McLeod* v. *Evans et al.* was called for trial and thereupon an order was made continuing the other cases until April 10, 1929. The trial of the McLeod case was resumed and the other cases were continued "to be taken up at the conclusion of the case then on trial." At the conclusion of the trial of the McLeod case the respondent judge made an order continuing the other cases to September 30, 1929, in department 45. It is averred by petitioners that when the other cases were called Judge Tappaan, who was then presiding, stated that he recognized that by reason of his statements made during the trial and at the conclusion of the McLeod case he was disqualified to try the other cases, and thereupon made an order continuing them to December 12, 1929, on the master calendar, but not in his department for trial. On December 12, 1929, the causes were again continued. Thereafter petitioners learned that the respondent judge intended to try the cases, and filed therein, except in the cause known as the Baxter case, an affidavit of bias and prejudice against Judge Tappaan. It is averred that the affidavit was filed pursuant to section 170 of the Code of Civil Procedure. Likewise the attorney for the plaintiff filed an affidavit in the Smith case. Thereafter, on the thirtieth day of January, 1930, Judge Tappaan made and filed his affidavit in response to petitioners' affidavit of bias

and prejudice. Copies of the respective affidavits are set out in the petition here.

The attorneys for petitioners and the respective attorneys for the plaintiffs in the twelve causes were unable to agree upon a judge to hear and determine the qualifications of Judge Tappaan under the affidavits of bias and prejudice. Thereafter the chairman of the judicial council, Honorable William H. Waste, designated and appointed the respondent Judge William C. Doran to hear and determine the matter. On the 27th of February, 1930, the matter was presented, argued and submitted to Judge Doran upon the pleadings, files, records and affidavits then on file, and Judge Doran, on the 12th of March, rendered his decision and order that Judge Tappaan was not disqualified from hearing the matters. From the stenographic report of the oral argument of counsel before this court it clearly appears that Judge Doran received no oral evidence upon the hearing of the matter of the alleged disqualification of Judge Tappaan, and that the affidavits were the only evidence presented. There is no conflict in the material facts as alleged. Therefore, where the facts are undisputed, as they are in this case, the disqualification of the judge becomes a question of law rather than of fact.

In the affidavit of the petitioner John A. Evans, filed in the various cases, it is claimed that Judge Tappaan is biased and prejudiced and that affiant cannot have a fair and impartial hearing of the causes by reason thereof. It is unnecessary to set out in detail the contents of this lengthy affidavit. From a careful analysis it can clearly be seen that petitioners' claim of bias and prejudice on the part of Judge Tappaan is predicated upon what the judge said in his opinion to and concerning the petitioner John A. Evans and his brother, David Evans. The excerpt from the judge's opinion is set forth in the affidavit and petition. The concluding part of the opinion, which is objected to by petitioners and which they claim evidences bias and prejudice, is as follows: "In passing on the evidence of the witnesses, the Court has been impressed with this fact: that with two exceptions I believe there has been no willful misstatement of facts on the part of any witnesses. Memory, of course, is but a fleeting thing at best. Time, place and circumstances are measured by the minds

of men and are always subject to the personal equation. Recollection is dimmed by time, and revived by consultation, at best an uncertain method. There are two exceptions in the case in that regard: that of the defendant and his brother. The defendant John A. Evans is a man of more than ordinary intelligence, but I am satisfied from the evidence he entered on a course of dealing that would have done credit to a Morgan or Kidd—to use the words of a most distinguished English jurist, he 'hoisted the Black Flag.' As to his brother—'he of the two names, he but mirrored the deportment of John, but he lacked the hardihood to carry it through, either through fear of the law or lack of brain power—I am inclined to believe it is the last, because if he had the hardihood of his brother, he would have been Robinson Crusoe and not Friday.'" Affiant states further, on information and belief, that the judge intended to say and wished to be understood as saying that there were two exceptions among the witnesses who had testified before him, who had made wilful misstatement of facts; that these two exceptions were John A. Evans and his brother E. D. Evans, and that he, the judge, did not believe affiant nor his brother in the action that had just been completed nor would he believe them in the twelve other actions to be tried; that he had the opinion that in the transaction relating to the organization and handling of the trust involved in the cases affiant took other people's money and property without any compunction of conscience and with the depravity and abandon of a pirate; that affiant and his brother, as well as Frank E. Davis, will give material testimony in the trial of the remaining cases; that the testimony is necessary to the proper defense in each of the matters. Affiant further alleges, upon information and belief, that the judge stated in the presence of several persons that he had known Frank E. Davis, a witness for the defendants in the McLeod case, and that he would disqualify himself on his own motion to sit in said cases because Davis, in his opinion, had committed perjury in another proceeding in his court; that Judge Tappaan, if he tries the other cases, will not believe the testimony of affiant, E. D. Evans or Frank E. Davis, all of which testimony will be true and material to the defense. Reference is also made by affiant to a purported stipulation that all the testimony received in the

McLeod case which was material and relevant should be used and considered as testimony in the other twelve cases.

Judge Tappaan denies that on September 30, 1929, or at any other time, he recognized that he was disqualified to try the case because of any statements made in the McLeod case; avers that he hoped that the cause would be tried by some other judge; that upon the conclusion of the testimony in the McLeod case in the second week of July, 1929, he took the case under submission and thereafter gave a decision; that he is unfamiliar with the pleadings in all of the other cases. The judge further says that within a day or two after commencing the hearing in the McLeod case he called all of the attorneys into chambers and stated that Frank E. Davis had been guilty, in his opinion, of serious misconduct in other matters before him, and that if the latter was a material witness it was a question whether or not he, Judge Tappaan, should proceed with the trial; that after the conversation he was requested by the parties to proceed; that he had no dealings with John Evans or David Evans prior to the trial. Judge Tappaan further denies that he is biased or prejudiced as against Evans or his witness, *or that any opinion he may have of them or their veracity is derived from any other source than from the information and evidence introduced during the trial of the case of McLeod v. Evans;* that he is disqualified to try the case by reason of any of said facts or circumstances; that he has formed an opinion as to the defendants' liability in any of the cases other than the one in which judgment has been ordered.

Respondents have interposed a general demurrer and a demurrer to the jurisdiction of this court. They also have filed an answer denying many of the allegations contained in the petition. The principal facts herein are undisputed. It may be noticed, incidentally, that the petition does not show that petitioners attack the justice or wisdom of Judge Tappaan's decision in the McLeod case upon the ground of unfairness. Since the two Evans witnesses in the McLeod case are parties to and doubtless necessary witnesses in all of the other cases, and Judge Tappaan "recognized that . . . he was disqualified to try the other cases" and it is admitted that they cannot be tried as consolidated, and there was no stipulation for consolidation, it would seem that

but one primary question remains for decision; the legal right to have the cause tried by a different judge. There are several other points which are incidental to but connected with the main point. These we shall proceed to discuss before taking up the principal question.

██ Have the petitioners seasonably presented their objections to the qualifications of Judge Tappaan to hear and determine the remaining cases, the respondents contending that their application to disqualify him has come too late? Section 170 of the Code of Civil Procedure, as amended in 1929 [Stats. 1929, p. 957], provides a general scheme for the proceeding to be had to disqualify a judge of the superior court. This section among other things provides: "The statement of a party objecting to the Judge, on the ground of his disqualification, shall be presented at the earliest practicable opportunity, after his appearance and discovery of the fact constituting the ground of the Judge's disqualification, in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such Judge." In view of respondents' defense it becomes necessary to determine if there was in fact a stipulation that the evidence adduced in the McLeod case was to be used in the other twelve or thirteen cases. Without stating the evidence in detail it appears that there was no such stipulation. Having so determined, it is unnecessary to consider petitioners' point further as to the seasonableness of this application to disqualify Judge Tappaan, as it is plainly seen that the application to disqualify was filed as soon as the alleged bias and prejudice was ascertained by petitioners, and that there could not possibly have been a claim of bias and prejudice made by petitioners at or before the commencement of the McLeod case, because any such claim originated in, grew out of and was founded upon the opinion of the judge in the McLeod case.

██ That the respondent judge regarded the witness Davis as disqualified for having committed, as he thought, perjury in another matter is merely an opinion as to the veracity of a witness. The prejudice must be against a *party*. (*Purvis* v. *Frink*, 55 Fla. 715 [46 South. 171]; *Conn* v. *Chadwick*, 17 Fla. 428; *Western Bank of Scotland* v. *Tallman et al.*, 15 Wis. 101.)

Does there exist such bias or prejudice in the mind of the trial judge as will preclude him from hearing and passing upon the remaining cases? Or in other words, does there exist in the mind of the trial judge such bias or prejudice against these petitioners that it is improbable by reason thereof that a fair and impartial trial can be had before him? Our Supreme Court, in *Estate of Friedman*, 178 Cal. 27, 39 [172 Pac. 140], declared that bias or prejudice is a condition of mind. Likewise, practically the same rule is laid down in 15 Ruling Case Law, at page 530, in the following language: "The words 'bias' and 'prejudice' as used in the law of the subject under consideration refer to the mental attitude or disposition of the judge towards a party to the litigation, and not to any views that he may entertain regarding the subject matter involved." Funk & Wagnall's Standard Dictionary defines "bias" as "a mental predilection or prejudice." Webster's New International Dictionary gives this definition: "A leaning of the mind; propensity or prepossession toward an object or view, not leaving the mind indifferent; bent; tendency; inclination; prejudice." "Bias" is a particular influential power which sways the judgment—the inclination of mind toward a particular object—and is not synonymous with "prejudice." A man cannot be prejudiced against another without being biased against him, but he may be biased without being prejudiced. (*Willis* v. *State*, 12 Ga. 444, 449.) Quoting from 15 Ruling Case Law, 530, we read: "The basis of the disqualification is that personal bias or prejudice renders the judge unable to exercise his functions impartially in the particular case," citing *Ex parte American Steel Barrel Co.*, 230 U. S. 35 [57 L. Ed. 1379, 33 Sup. Ct. Rep. 1007]..

Petitioners contend that since the trial judge heard the McLeod case and made up his mind as to all matters involved therein, he has now become incapable of affording petitioners a fair and impartial trial in the several actions pending against them. Webster defines "impartial" as "not partial; not biased in favor of one party more than another; indifferent; unprejudiced; disinterested." In Funk & Wagnall's Standard Dictionary we find the word "impartial" defined as follows: "Not disposed to prefer or favor one above another; unbiased; unprejudiced;

just; fair." ▮ An expression of opinion by a judge upon a question of law does not disqualify him upon another hearing of the case. (*Pearson* v. *Hopkins*, 2 N. J. L. 195; *Leonard* v. *Willcox*, 101 Vt. 195 [142 Atl. 762, 770]; *State* v. *Woods*, 124 La. 738 [50 South. 671].) Nor is a judge disqualified by a statement of his belief as to the guilt of a person charged with an offense before him. (*People* v. *Phillips*, 30 Cal. App. 31 [157 Pac. 1003, 1005]; 33 C. J. 1009.) There are, however, cases *contra* to this. See *Stamp* v. *Commonwealth*, 195 Ky. 404 [243 S. W. 27], and *State* v. *Fullerton*, 76 Okl. 35 [183 Pac. 979].

The rules above stated are not conclusive of the situation in the instant case, for, as it fully appears from the record herein, the trial judge will not only be called to pass upon the questions of law that may be presented to him in the cases, but he will nevertheless be called upon to pass upon the *issues of fact,* and the *evidence* upon these issues of fact will no doubt be conflicting. His conclusions upon the issues of fact may be determinative of the case. In other words, the judge will be in the position of a juror, as every trial judge is when hearing and trying a nonjury case where issues of fact are involved. He will be obliged to consider and weigh the evidence and the credibility of the witnesses, and among these witnesses will be the petitioners herein. It is alleged in the petition, and it is not denied, that petitioners will give testimony which will be relevant, material and pertinent to their defenses. It has been held by some of the highest courts of the states of the Union that when judges are obliged to pass upon the facts no good reason is apparent why the test of qualification should be different from that in the case of jurors, for the judge, under such circumstances, is in reality a juror passing upon questions of fact. (*State* v. *Board of Education,* 19 Wash. 8, 13 [67 Am. St. Rep. 706, 710, 40 L. R. A. 317, 52 Pac. 317].) So far as we have been able to ascertain this test has not as yet been imposed in this state.

"The bias or prejudice which may disqualify a judge must be of a character calculated to seriously impair his partiality and sway his judgment." (33 C. J. 1000. See *Hoyt* v. *Zumwalt,* 149 Cal. 381 [86 Pac. 600]; *People* v. *Findley,* 132 Cal. 301 [64 Pac. 472]; *Higgins* v. *San Diego,* 126 Cal. 303 [58 Pac. 700]; *Dakan* v. *Superior Court,* 2

Cal. App. 52 [82 Pac. 1129].) Before the adoption of section 170 of the Code of Civil Procedure as it now stands, when the trial judge was obliged to pass upon his own qualifications, the District Court of Appeal, while considering this point in *Dakan* v. *Superior Court, supra,* remarked: "The judge should not only be honest and impartial, but his acts and conduct should be such that there can be no foundation for questioning his motives. It is apparent that the section may be greatly abused by dishonest litigants or unscrupulous lawyers. It is therefore the duty of the trial judge to carefully scrutinize each case, to the end that the law may not be abused for sinister purposes. If the trial judge is convinced from the facts of the integrity of his own conduct and motives, of the fact that his sole desire is to see the law applied with equal and exact justice to all, and further that the object of the party who alleges the disqualification is to thwart justice, or to get the case before another judge of his own choosing, he should have courage to act accordingly. On the other hand, where the facts are honestly stated, and when so stated they point to a certain condition that would absolutely influence men in the business transactions of life, and when applied to the particular case would lead a reasonable person to hesitate as to whether or not the judge could, under the circumstances, considering the weaknesses of human nature, entirely ignore such facts, there should be no hesitation in calling in another judge, so that the fountain head of justice should be above suspicion."

 In the instant case, therefore, after carefully considering the authorities heretofore given and applying the test last stated—which test we think fair, just, equitable and impartial—to the record as it is presented to us, can it be said as a matter of law that the trial judge is disqualified and that the petitioners would not be afforded a fair and impartial trial as contemplated by law? Briefly adverting to the record before us, we nowhere find a denial in the answer of the trial judge nor in his affidavit that he did not intend to say nor did not want to be understood as saying that the defendants had testified falsely, or that they were without veracity or integrity. He very frankly states "that any opinion he may have of them or either of them or their veracity is not derived from any other

source than from the information and evidence introduced during the trial of the case of *McLeod* v. *Evans.*'' The opinion delivered by the respondent judge, which opinion contained several pungent, trenchant and caustic comments to and concerning these petitioners, and which likened their course of conduct to a Morgan and a Kidd, was imparted with the utmost sincerity. The remarks in the decision were, no doubt, prompted by the respondent judge's sense of justice and because of his firm belief that perjury had been committed by the petitioners in his court. And furthermore, we may well appreciate that there must have arisen in the breast of the trial judge a righteous indignation when he thought that petitioners had wilfully testified falsely. We have not the evidence before us. We must assume that the decision and opinion of Judge Tappaan, and every part thereof, is amply sustained by the evidence. On the other hand, is it fair and just to allow a judge who has such a definite, positive, fixed and firm belief, justifiable though it may be, concerning these petitioners, the two defendants, who were regarded by him as pirates and falsifiers, to again pass upon the issues of fact in a case where the defendants will undoubtedly be material witnesses? Would a reasonable person hesitate as to whether or not the trial judge could, under the circumstances, considering the weaknesses of human nature, entirely ignore such facts—the belief that the petitioners had committed perjury? Can the judge ignore his opinion and belief, though honest it may be, that these petitioners have wilfully testified falsely? We think not. ''Is it made to appear probable that, by reason of bias or prejudice of such judge . . . a fair and impartial trial cannot be had before him?'' (Code Civ. Proc., sec. 170, as amended.) We think it has. Furthermore, it would be unfair to ask a judge, under these circumstances, to again try issues of fact involving the honor, integrity and veracity of men whom he had so recently condemned and denounced.

Assuming that the trial judge was correct in his fierce discommendation of petitioners, they nevertheless are entitled to go before a judge of another department of the court, one who will assume that they are telling the truth until the contrary has been shown and where no attaint of perjury will follow them. There they may present their

defense, if any they have, to a judge who has not a fixed or settled opinion of their integrity or veracity. The Supreme Court of Vermont in *Leonard* v. *Willcox, supra,* a case dealing with a judge's disqualification, said: ''A litigant ought not to be compelled to submit to a judge who has already confessedly prejudged him, and who is candid enough to announce his decision in advance, and his serious doubt that he would do otherwise than adhere to it, no matter what the evidence must be.'' (Citing *State* v. *Board of Education, supra; Williams* v. *Robinson,* 6 Cush. (Mass.) 333, 335; *Mores* v. *Julian,* 45 N. H. 52 [84 Am. Dec. 114, 116].)

Respondents argue that this court has no jurisdiction to grant the writ of prohibition for the reason that petitioners' remedy, if any, is by appeal. In support of their contention they cite *Talbot* v. *Pirkey,* 139 Cal. 326 [73 Pac. 858]. It appears that in that case the affidavits filed in support of the motion were amply sufficient, if uncontradicted, to establish the charge of bias and to disqualify the respondent judge; but it is not alleged that no counter-affidavits were filed, and it could not be ascertained that the motion was denied upon the case made by the affidavits. The court there held that if there was error it could be remedied on appeal. Furthermore, there were no facts alleged or showing made that the remedy by appeal was inadequate. In the instant case the undenied and undisputed allegations of the petitioners as to the amount claimed by the plaintiffs, some $260,000, the length of time that it will require to try the various cases, based upon the trial of the first action, the excessive costs of the transcripts and the large amount of labor involved in taking appeals all lead to the inevitable conclusion that by reason and because of those extraordinary circumstances petitioners have not a plain, speedy and adequate remedy in the ordinary course of law. (Sec. 1103, Code Civ. Proc.; *Hall* v. *Superior Court,* 198 Cal. 373, 387 [245 Pac. 814, 820]; *Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315 [187 Pac. 1056]; *Quatman* v. *Superior Court,* 64 Cal. App. 203 [221 Pac. 666]; *North Bloomfield G. M. Co.* v. *Keyser,* 58 Cal. 315.)

It is said by the Supreme Court in *Hall* v. *Superior Court, supra:* ''It is insisted, however, that the petitioner has other

remedies, i. e., by appeal, and that therefore the writ should not issue. This argument is not well taken. In the case of *Lindsay-Strathmore Irr. Dist.* v. *Superior Court, supra,* the writ was granted, although the same result, could have been achieved by taking an appeal. In *Quatman* v. *Superior Court,* 64 Cal. App. 203 [221 Pac. 666], the same objection was raised as in the instant case and in answer thereto the court said: 'Where a judge is disqualified to act in any proceeding or cause the disability necessarily enters into all orders and decisions made by him other than those specially excepted and provided for in the codes, and to refuse the writ on the ground that a remedy might be had in another manner would be to permit the trial to proceed to a final conclusion by the disqualified judge and then set aside the proceedings as void *ab initio.*' No good purpose could be served in permitting a disqualified judge to perform certain acts and thereafter declare them void on the ground that he had no jurisdiction to perform the same.'' This rule finds support not only in the decisions of our state but in those from other states. (*People ex rel. Brown* v. *District Court,* 26 Colo. 226 [56 Pac. 1115]; *Rush* v. *Denhardt,* 138 Ky. 238 [Ann. Cas. 1912A, 1199, 127 S. W. 785]; *State ex rel. Jones* v. *Gay,* 65 Wash. 629 [118 Pac. 830]; *State ex rel. McAllister* v. *Slate,* 278 Mo. 570 [8 A. L. R. 1226, 214 S. W. 85, 88]; *State ex rel. Renfro* v. *Wear,* 129 Mo. 619 [31 S. W. 608].)

Petitioners' application for the writ of prohibition is granted as prayed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 22, 1930.